UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNAN G. DANDAR and
DANDAR & DANDAR, P.A.,

     Plaintiffs,

v.                   Case No. 8:12-cv-2477-T-33EAJ

CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
F. WALLACE POPE, JR., ROBERT
V. POTTER, JR., and JOHNSON
POPE BOKOR RUPPEL & BURNS
L.L.P.,

     Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiffs'
Verified Motion for Emergency Preliminary Injunction (Doc. #
2). Defendants filed a response in opposition to the motion
(Doc. # 15) on November 13, 2012. Plaintiffs filed a reply to
Defendants' response, with leave of Court, on November 15,
2012. (Doc. # 17). Upon due and careful consideration of the
motion, the response, and the reply, as well as the parties'
arguments at the Court's November 19, 2012, hearing, the Court
denies the motion.

**I.**  **Background**

The facts of this case are extensive and complex. The
instant motion for preliminary injunction stems from

litigation initiated in 1997.  In that year, Plaintiff Kennan Dandar brought a wrongful death action against Defendant Church of Scientology Flag Service Organization, Inc., on behalf of the personal representative of the Estate of Lisa McPherson.  (Doc. # 1 at 3).  In the summer of 2003, Scientology filed numerous motions to disqualify Dandar and to dismiss the McPherson case, all of which were denied.  Id. at 4.  Subsequently, after more than seven years of litigation, the Pinellas County Circuit Court ordered the McPherson parties--for a fifth time--to attempt to resolve the dispute in mediation.  Id.

Before this mediation occurred, Dandar had been removed as lead counsel for the Estate by order of the Honorable Robert Beach "at the demand of [Defendant F. Wallace] Pope on behalf of his client, Scientology, saying to the court that the McPherson case would never settle as long as Dandar remained the estate's counsel."  Id.  Despite his removal as lead counsel, Dandar attended the court-ordered mediation on May 26, 2004.  Id.  At the mediation, "Scientology, through Pope, insisted on a 'global settlement' encompassing not only the court ordered mediation for the McPherson case, but also the myriad of cases brought by Scientology and related entities against Dandar or the Estate."  Id.  Accordingly,

Dandar, along with Plaintiff law firm Dandar & Dandar, P.A., entered into a confidential settlement agreement as the "McPherson parties." Id. at 5.  Within the settlement agreement, the McPherson parties agreed to "full, permanent disengagement from the Scientology Parties, including no further anti-Scientology activity, and no involvement in any adversarial proceedings of any description against the Scientology Parties under any circumstances at any time." (Doc. # 2-3 at 2).  Dandar executed this agreement over a signature block that reads: "Kennan G. Dandar, Esq., Counsel for Dell Liebreich, both individually and as personal representative of the Estate of Lisa McPherson, and authorized signatory on behalf of the Estate of Fannie McPherson . . . , Kennan G. Dandar, Thomas J. Dandar, [and] Dandar & Dandar, P.A. . . . ."  (Doc. # 2-3 at 4).

On February 13, 2009, nearly five years after the dismissal of the McPherson case, Dandar and the law firm Dandar & Dandar, P.A. filed a wrongful death action against Scientology on behalf of the Estate of Kyle Thomas Brennan in the federal district court for the Middle District of Florida. (Doc. # 1 at 8).  On March 20, 2009, Scientology filed a motion in the Pinellas County Circuit Court to enforce the settlement agreement.  (Doc. # 15 at 4).  On June 10, 2009,

Judge Robert Beach "ordered Dandar to cease his representation of all parties against Scientology." (Doc. # 1 at 9). Dandar appealed this order to Florida's Second District Court of Appeal, arguing that the settlement agreement is unenforceable because it contains a practice restriction in violation of the rules regulating the Florida Bar. Id. On November 13, 2009, the Second District Court of Appeal affirmed Judge Beach's order in its entirety. (Id.; Doc. # 15 at 4-5).

Despite the orders of the circuit and appellate courts, Dandar apparently declined to cease his involvement in the Brennan matter. Dandar subsequently filed in the state court a motion to void the settlement agreement which, after a hearing, was denied. (Doc. # 1 at 10). On April 12, 2010, after finding that Dandar had not ceased his involvement in the Brennan matter, Judge Beach found Dandar in civil contempt for failing to comply with the court's June 10, 2009, order. Additionally, Judge Beach "ordered Dandar to pay Scientology damages in the amount of $50,000 . . . , directed Dandar to file a motion to withdraw in the Brennan action in federal court, and ordered that if Dandar failed to withdraw from the federal action, a civil penalty of $1,000 per day would accrue against him and the Dandar law firm." Id. The Second District Court of Appeal later upheld Judge Beach's April 12,

2010, order, although the appellate court reduced the amount of the judgment awarded against Dandar.  Id. at 14.  Dandar subsequently filed a petition for writ of prohibition with the Florida Supreme Court seeking an order directing the Second District Court of Appeal to issue an order "recognizing that the circuit court . . . exceeded its jurisdiction by imposing a practice restriction and orders of criminal contempt of court."  Id. at 15.  The Florida Supreme Court "transferred the petition to the Florida Court of Appeal for the Second District[,] which denied it."  Id.

Immediately after Judge Beach issued the April 12, 2010, order finding Dandar in contempt, Dandar "filed in the Brennan federal court case a motion entitled 'Unopposed Involuntary Motion to Withdraw as Counsel for Plaintiff.'"  Id.  The district court denied this motion on April 22, 2010.  Id.  On May 6, 2010, Judge Beach entered an order directing Dandar to show cause as to why he and the Dandar & Dandar law firm should not be held in criminal contempt for failing to make a good faith effort to withdraw as counsel in the Brennan matter.  Id.

On August 25, 2010, "the Brennan Estate filed an emergency motion in federal court seeking a permanent injunction against Scientology and, if necessary, Judge Beach,

to prohibit their interference with the federal court's orderly progression of the case." Id. at 11. The district court denied this emergency motion, reasoning that "[c]omity commands the federal court's not assuming that a state court will enter an unlawful order or interfere with the orderly administration of the federal court." Estate of Kyle Thomas Brennan v. Church of Scientology Flag Svc. Org., Inc., No. 8:09-cv-264-T-23EAJ, 2010 WL 3833996, at *3 (M.D. Fla. Sept. 28, 2010) (quoting the court's August 30, 2010, order). On August 31, 2010, Judge Beach held a hearing and modified the amount of sanctions to be imposed on Dandar as a result of his noncompliance. Id. On September 2, 2010, the Brennan estate filed a second emergency motion in federal court for a permanent injunction against Judge Beach and Scientology. This time, the district court granted the motion. Id.

The federal district court cited the All Writs Act, 28 U.S.C. § 1651(a), as authority for its order providing that:

> State [J]udge Robert Beach of Pinellas County, Florida, and any other judge of the Circuit Court for Pinellas County, Florida, or elsewhere presiding in Estate of Lisa McPherson v. Church of Scientology Flag Service Organization . . . ; the defendant Scientology; the defendant Scientology's counsel in this action; and . . . any other person acting in concert with any of them and with actual notice of this order are permanently enjoined from levying, assessing, or furthering to any extent any levy or assessment or any penalty, charge, damage,

-6-

fine, suspension or revocation of any right, privilege, or emolument, or the like, including convening of a hearing or entry of any order or judgment . . . or other undertaking of a similar nature, on account of Kennan Dandar's representation of the plaintiff in <u>Estate of Brennan v. Church of Scientology</u> . . . in the United States District Court for the Middle District of Florida, or his failure to accomplish withdrawal from representation in the case . . . .

<u>Brennan</u>, 2010 WL 3833996, at * 16.

Scientology appealed the order granting the injunction and, on July 7, 2011, the United States Court of Appeals for the Eleventh Circuit reversed and vacated the district court's decision. <u>Id.</u> at 13. The Eleventh Circuit found that the district court's entry of the permanent injunction violated the Anti-Injunction Act, 28 U.S.C. § 2283, and reasoned that "a district court['s] conviction that a state proceeding has reached or is reaching an erroneous result does not alone warrant an injunction against those proceedings." <u>Estate of Brennan ex rel. Britton v. Church of Scientology Flag Svc. Org., Inc.</u>, 645 F.3d 1267, 1277 (11th Cir. 2011). On October 3, 2011, the district court granted *nunc pro tunc*, to April 12, 2010, Dandar's motion to withdraw. (Doc. # 1 at 13).

On October 10, 2011, Scientology "moved in the Circuit Court for Pinellas County for the award of attorney's fees, damages, and other relief incident to the contempt against

Dandar and the Dandar Law Firm for breaching the settlement agreement in the McPherson action." Id. at 15.

On or before July 12, 2012, Judge Beach recused himself "from hearing any further matters concerning Dandar," and the Honorable Crockett Farnell assumed jurisdiction over this case. Id. On July 12, 2012, Judge Farnell ruled "that because Dandar was found to have violated the terms of the McPherson settlement agreement, under Florida Rule of Civil Procedure 1.730(c)," Scientology is entitled to certain reasonable fees and taxable costs incurred in relation to the Brennan case. Id. at 16. Pursuant to Judge Farnell's ruling, a final hearing on the amount of attorney's fees and costs owed to Scientology is scheduled for November 26, 2012. Id. at 17.

In an effort to prevent that hearing from occurring, Dandar filed the instant civil rights action pursuant to 42 U.S.C. § 1983. Dandar's motion for preliminary injunction, in which Dandar requests the issuance of an injunction "to prohibit Defendants . . . from proceeding to any hearing, including the one scheduled on November 26, 2012, . . . until this Court has addressed the Defendants' violations of [Section] 1983" (Doc. # 2 at 1), is now before this Court.

## II.  Standard for Issuance of Preliminary Injunction

The Eleventh Circuit has established four prerequisites for a preliminary injunction.  The movant must clearly show: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the harm an injunction may cause defendant; and (4) that granting the injunction would not disserve the public interest.  Church v. City of Huntsville, 30 F.3d 1332, 1341-42 (11th Cir. 1994).

As the Fifth Circuit noted in United States v. Bd. of Educ. of Greene Cnty., Miss., 332 F.2d 40, 45-46 (5th Cir. 1964), "[t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction."  The Eleventh Circuit has also emphasized that "[b]ecause a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation omitted).

## III.  Analysis

### A.  Likelihood of Success

Section 1983 provides, in relevant part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any
State or Territory . . . subjects, or causes to be
subjected, any citizen of the United States . . .
to a deprivation of any rights, privileges, or
immunities secured by the Constitution and laws,
shall be liable to the party injured in an action
at law, suit in equity, or other proper proceeding
for redress . . . .

42 U.S.C. § 1983.  "To state a cause of action under section 1983, [a] [p]laintiff must allege: (1) that he was deprived of rights, privileges or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law." Ridley v. Stewart, No. 3:07-cv-1173-J-16JRK, 2008 WL 876960, at *3 (M.D. Fla. Mar. 27, 2008) (citing Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)).  In the instant case, Plaintiffs "point[ ] to several alleged constitutional violations, but fail[ ] to explain how the conduct complained of was committed by [a defendant] acting under color of state law." Ridley, 2008 WL 876960, at *3.

"The Eleventh Circuit has identified three tests for determining whether a private person or entity should be considered a state actor: '(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test.'" Id. (quoting Nat'l Broad. Co. v. Commc'ns Workers of

<u>Am.</u>, 860 F.2d 1022, 1026 (11th Cir. 1988)).  The public function test, strictly limited in application, "covers only private actors performing functions traditionally the exclusive prerogative of the State." <u>Nat'l Broad.</u>, 860 F.2d at 1026 (internal quotation omitted).  Since acting as a private litigant in a state or federal court proceeding does not constitute an exclusive function of the government, the public function test is inapplicable to the present case. Similarly, the state compulsion test, which "limits state action to instances in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution," does not apply.  <u>Id.</u>

Dandar apparently relies on the "nexus/joint action test" to establish state action in this case.  (The Court notes that, although Dandar argues in his reply that "Defendants are state actors under all three tests" (Doc. # 17 at 4), neither the complaint nor the motion itself directly alleges that any one of the three tests is satisfied.)  To determine whether the nexus test applies, a Court must address whether "the State had so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise." <u>Nat'l Broad.</u>, 860 F.2d at 1026-27 (internal quotation omitted).  "To charge a private

party with state action under this standard, the governmental body and private party must be intertwined in a symbiotic relationship." Id. at 1027 (internal quotation omitted). This test also does not support a finding of state action in the instant case.

With regard to the symbiotic relationship requirement, the Eleventh Circuit has reasoned that "private conduct is fairly attributable [to the State] only when the State has had some affirmative role, albeit one of encouragement short of compulsion, in the particular conduct underlying a claimant's civil rights grievance." Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1348 (11th Cir. 2001). The Court determines that the relationship between Judge Beach and the private Defendants in this matter cannot be characterized as one of "interdependence" or "encouragement," based on the facts alleged in Dandar's complaint.

Dandar alleges that "Defendants acted under color of state law and their conduct amounted to state action when they knowingly invoked the processes of the Florida state courts while the Brennan Action was pending . . . " and that "by invoking the state court to impose a practice restriction . . . Defendants violated the Plaintiffs' rights under the First,

Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution . . . ." (Doc. # 1 at ¶¶ 42-43).

Notably, Dandar does not allege in the complaint or the motion for preliminary injunction that Defendants conspired with Judge Beach or any other state actor in the process of allegedly violating Dandar's constitutional rights. Only in Dandar's reply to Scientology's response to the motion does Dandar first directly allege the occurrence of a conspiracy between the private Defendants and any identifiable state actor. Although Defendants accuse Dandar of inappropriately introducing new legal arguments and new factual allegations in his reply (Doc. # 20 at 2), the Court finds that, because Dandar's conspiracy allegation is insufficient to allege state action on behalf of the private Defendants in this matter, the procedural appropriateness of this argument in the reply is inconsequential to the Court's ruling on the motion for preliminary injunction.

In Harvey v. Harvey, 949 F.2d 1127 (11th Cir. 1992), the Eleventh Circuit addressed the issue of a private litigant's alleged conspiracy with a judge in the context of a Section 1983 action. In that case, the plaintiff claimed that certain private defendants "were transformed into state actors because they conspired with other alleged state actors." Harvey, 949

F.2d at 1133.   The Eleventh Circuit reasoned that, given the facts of Harvey, this argument failed on two grounds: First, because the court found none of the defendants to be state actors, the court determined that "all parties retain their private status[,] and no state actor exists with whom conspiracy is possible."   Id.   Second, the court concluded that, "even construing the complaint liberally, [the plaintiff] failed to plead conspiracy adequately," because, "[f]or purposes of [Section] 1983, the plaintiff must plead in detail, through reference to material facts, the nature of the conspiracy between the state actor(s) and the private persons."   Id.   See also Cox v. Mills, 465 Fed. App'x 885, 887 (11th Cir. 2012) ("[T]he plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the private person and the state actor.   It is insufficient to merely string together discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights.") (internal citations and quotations omitted).

Dandar's complaint does not adequately plead conspiracy. Indeed, a review of the complaint itself reveals that the document lacks even a single mention of the word "conspiracy."

"At best, it presents a claim for misuse of state judicial procedures, for which there is no action under section 1983." Harvey, 949 F.2d at 1133.

This Court determines, in accordance with Harvey, that "[u]se of the courts by private parties does not constitute an act under color of state law." Id. Thus, Defendants "cannot be liable under Section 1983 for their resort to state tribunals." Id. If Dandar intended to accuse Judge Beach, or any other official, of judicial impropriety, Dandar had an opportunity to elaborate upon such accusations in the complaint. Finding no indication of corruption, this Court determines that Dandar's complaint merely amounts to a disappointed litigant's attempt to revisit the legal conclusions of the state circuit court.

However, Dandar argues that the Supreme Court's decision in Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922 (1982), is applicable to the instant case. Specifically, Dandar cites to Lugar for the proposition that "[p]rivate misuse of [a] state statute does not describe conduct that can be attributed to a state, but a procedural scheme created by state law through state courts is a product of state action and . . . properly may be addressed in [an] action under [Section 1983]." (Doc. # 2 at 9). However, in Lugar, the petitioner's complaint

-15-

challenged as defective under the Due Process Clause a state statute requiring only the submission of an ex parte petition before permitting a creditor's prejudgment attachment of a debtor's property. Lugar, 457 U.S. at 924. The Court found this challenge to present a valid cause of action under Section 1983 because a "procedural scheme created by [a] statute obviously is the product of state action. This is subject to constitutional restraints and properly may be addressed in a [Section 1983] action, if [the party charged with the deprivation is a person who may fairly be characterized as a state actor]." Id. at 941. Lugar found that the respondents had acted under color of state law by "joint[ly] participat[ing] with state officials in the seizure of [the] disputed property." Id.

Dandar apparently relies on Lugar's "procedural scheme" language to allege that Defendants in the instant case have acted under color of state law; in doing so, Dandar has ignored the fundamental factual distinctions between the two actions. Unlike the petitioner in Lugar, Dandar does not allege that a particular state statute is procedurally defective under the Fourteenth Amendment. Instead, the gravamen of Dandar's complaint is that the state courts, in Dandar's opinion, have wrongly applied the state law to

Dandar's unique factual circumstances, and consequently are scheduled to award Defendants an "unconstitutional" final judgment at the November 26, 2012, hearing.  Dandar identifies no statutory "procedural scheme" enacted by the state of Florida that has interfered with Dandar's exercise of certain constitutional rights.  Dandar argues only that Judge Beach's decision to enforce the practice restriction, "prosecuted by the Defendants[,] permanently enjoins the Plaintiffs from representing any party against Scientology anywhere and at any time in the future, in any jurisdiction . . . [which deprives] the Plaintiffs of their past, present and future right to pursue a livelihood as an attorney to the detriment of [Plaintiffs'] constitutional rights." (Doc. # 1 at ¶¶ 44-45).

Similarly, Dandar's motion for preliminary injunction focuses more on Dandar's various arguments that the state courts have misapplied the relevant state law than on the merits of Dandar's motion itself.  Thus, by initiating this Section 1983 action against the private Defendants, Dandar effectively attempts to invoke the jurisdiction of this Court to reevaluate certain state court decisions which Dandar contends to be erroneous and even "illegal." (Doc. # 1 at 18).  This Court declines to do so.  To the extent that the state courts might have committed an error of law, Dandar's

proper remedy lies in the appellate courts of the state--not in a Section 1983 claim against private litigants.  Because Dandar has failed to state a claim under Section 1983, he has correspondingly failed to demonstrate a substantial likelihood of success on the merits of his claim, and the motion for preliminary injunction accordingly must be denied.

**B.   Substantial Threat of Irreparable Injury, Balance of Harms, and Serving the Public Interest**

Because the Court finds that Dandar is unlikely to succeed on the merits of his Section 1983 claim, the Court need not address the remaining prerequisites for issuance of a preliminary injunction.  However, given the history of the present litigation, the Court notes that the requested injunction's effect on the public interest would also likely prevent granting the motion.

Basic principles of federalism and comity require this Court to observe "a proper respect for state court functions, a recognition of the fact that the entire country is made up of a Union of separate governments, and a continuance of the belief that the National Government will fare best if the states and their institutions are left free to perform their separate functions in separate ways." Younger v. Harris, 401 U.S. 37, 44 (1971).

Dandar's phrasing of the request for an injunction--that the Court should "issue an injunction *against the Defendants* from proceeding in state court," rather than a request to enjoin the state court hearing itself--is a thinly veiled attempt to avoid the same federalism-derived obstacle that the Eleventh Circuit recognized in its 2011 <u>Brennan</u> decision.  As explained in that case, "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." <u>Brennan</u>, 645 F.3d at 1273.

The Court acknowledges Dandar's argument that "Congress plainly authorized the federal courts to issue injunctions in [Section] 1983 actions," and that the Supreme Court "long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." (Doc. # 2 at 10) (quoting <u>Mitchum v. Foster</u>, 407 U.S. 225, 242 (1972)).  Furthermore, the Court agrees that the anti-injunction statute at issue in the Eleventh Circuit's decision in <u>Brennan</u> would not necessarily operate to bar this Court's issuance of an injunction pursuant to Section 1983.  <u>See</u> <u>Mitchum</u>, 407 U.S. at 243 ("Today we decide only that the District Court in this case was in error

-19-

in holding that, because of the anti-injunction statute, it was absolutely without power in this [Section] 1983 action to enjoin a proceeding pending in state court under any circumstances whatsoever.").

However, even if Dandar had sufficiently alleged state action on behalf of the private Defendants in this matter, this Court would still be inclined to deny a motion to enjoin the relevant state court proceedings in light of the Eleventh Circuit's explanation accompanying the holding in Brennan. Although the Eleventh Circuit founded its reversal of the injunction on a violation of the Anti-Injunction Act, the court also explained:

> [W]e and the District Court are required to give Judge Beach's rulings and orders the same effect they would be given by the state of Florida--i.e., to give them full faith and credit. 28 U.S.C. § 1738. It follows that we are required to accept that Dandar voluntarily committed himself contractually not to represent parties litigating against Scientology and that that commitment is legally enforceable under state law.

Brennan, 645 F.3d at 1276 n.5. In the complaint, Dandar clearly alleges that his "deprivation of rights," a necessary element of his Section 1983 claim, occurred when Defendants "invok[ed] the state court to impose a practice restriction." (Doc. # 1 at 18). Thus, Dandar's Section 1983 claim would necessarily require this Court to determine whether Judge

Beach's actions in interpreting and enforcing the practice restriction were inconsistent with the Constitution--an inquiry forbidden by this Court's obligation to give Judge Beach's rulings full faith and credit.

This Court declines to intervene in the state court proceeding at Dandar's urging, and instead will heed the Eleventh Circuit's admonition that "a district court['s] conviction that a state proceeding has reached or is reaching an erroneous result does not alone warrant an injunction against those proceedings."  <u>Brennan</u>, 645 F.3d at 1277.

## IV.   <u>Conclusion</u>

Because Dandar has failed to establish a likelihood of success on the merits of his Section 1983 claim, and because the Court finds that granting the injunction would disserve the public interest, the Court denies the motion for preliminary injunction.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED** that:

Plaintiffs' Verified Motion for Emergency Preliminary Injunction (Doc. # 2) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>20th</u> day of November 2012.

-21-

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record