UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNAN G. DANDAR and
DANDAR & DANDAR, P.A.,

     Plaintiffs,

v.                     Case No. 8:12-cv-2477-T-33EAJ

CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
F. WALLACE POPE, JR., JOHNSON
POPE BOKOR RUPPEL & BURNS LLP,
and DAVID MISCAVIGE,

     Defendants.
_____/

## ORDER

This cause comes before the Court in consideration of Defendants' Motion to Dismiss (Doc. # 48), filed on January 18, 2013.  Plaintiffs filed a response in opposition to the motion on January 31, 2013.  (Doc. # 54).  For the reasons that follow, the Motion is granted in part and denied in part.

## I.  Background

Beginning in 1997, Plaintiff Kennan Dandar represented the Estate of Lisa McPherson in a wrongful death action against Defendant Church of Scientology Flag Service Organization in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida.  (Doc. # 45 at

¶ 22).   Dandar alleges that Defendant David Miscavige, who Dandar describes as "the worldwide supreme leader over all Scientology entities," id. at ¶ 19, retained Defendant Johnson Pope Bokor Ruppel & Burns LLP in the McPherson case "due to [the law firm's] political connections in Clearwater and Pinellas County." Id. at ¶ 24.

The presiding judge in the McPherson matter, the Honorable Robert Beach, though not joined as a defendant in this action, is alleged to have conspired with the private Defendants to violate Dandar's "rights under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution." Id. at ¶ 79. Dandar claims that Scientology originally "sought to have Senior Judge Robert E. Beach appointed to preside over the [McPherson] case by filing motions to disqualify the [original] presiding judge, the Honorable Susan Schaeffer." Id. at ¶ 26. Additionally, Dandar claims that "while Scientology sought to disqualify Judge Schaeffer, Judge Beach campaigned to become the presiding judge in the McPherson civil case." Id. Judge Schaeffer eventually recused herself from the McPherson matter, and the Chief Judge of the state circuit court then assigned Judge Beach to the McPherson case. Id.

After Judge Beach had been assigned to the McPherson

2

case, "Miscavige [allegedly] order[ed] and [paid] another Scientology counsel to meet ex parte with a state actor . . . Judge Robert Beach, in the McPherson death case." Id. at ¶ 27.   Dandar claims that "Scientology's counsel, after meeting many times with Judge Beach ex parte to gather sympathy for Scientology in the wrongful death case, defamed Dandar in his business reputation and goodwill, and pursuant to a game plan previously concocted by . . . Miscavige and Scientology, convinced Judge Beach to contrive a defective and illegal procedure . . . to make the McPherson case go away by simply removing Dandar as counsel for the Estate in the wrongful death case." Id. at ¶ 28.   Judge Beach allegedly "joined in this plan and agreed to remove Dandar as lead counsel for the McPherson estate." Id.

Despite having been removed as lead counsel, Dandar appeared at the May 26, 2004, mediation conference scheduled in the McPherson action. Id. at ¶ 33. According to Dandar, "Scientology, through Pope, refused to mediate the McPherson wrongful death case, and instead insisted on a 'global settlement conference' encompassing not only the court ordered mediation for the McPherson case, but also the myriad of cases brought by Scientology and related

3

entities against Dandar, Dell Liebreich, or the estate." Id. During the mediation, "Dandar agreed to a global settlement, releasing any claim he had against Scientology at that time . . . by executing a Release . . . so that the Estate of Lisa McPherson could go forward with a settlement." Id. Also at the conference, Dandar ultimately signed (though, Dandar insists, not in his individual capacity, but rather as "counsel") a Settlement Agreement including a provision the parties refer to as the "disengagement clause," which provides, in relevant part:

> The McPherson Parties agree to a full, permanent disengagement from the Scientology Parties, including no further anti-Scientology activity, and no involvement in any adversarial proceedings of any description against the Scientology Parties under any circumstances at any time.

Id. at ¶ 37.

Dandar, his law partner Thomas J. Dandar, and their law firm, Dandar & Dandar, P.A., were included within the Settlement Agreement's definition of "the McPherson Parties." Id. at ¶ 34. "The McPherson case was dismissed on June 8, 2004, by the filing of a Joint Voluntary Dismissal With Prejudice." Id. at ¶ 36.

Nearly five years later, on February 13, 2009, Dandar filed another wrongful death action against Scientology,

this time on behalf of the Estate of Kyle Brennan, in the United States District Court for the Middle District of Florida. Id. at ¶ 40. In response to Dandar's perceived breach of the Settlement Agreement, "Defendants filed a motion [to enforce the Settlement Agreement] in the closed case of McPherson." Id. at ¶ 43. According to Dandar, by permitting Defendants to file this motion in the McPherson case rather than filing a new action for the purported breach, "[t]he state court, through co-conspirator Judge Beach, waived the legal requirements . . . to pay a filing fee and file a complaint to invoke the jurisdiction of the court, . . . waived the requirement of process and service of process, and permitted the Defendants to avoid the required random selection of judge assignment." Id. at ¶ 44.

Next, Dandar contends, "as part of the conspiracy with Defendants," Judge Beach held that the disengagement provision "prohibited Dandar's representation of the Brennan Estate in federal court, and that this prohibition was enforceable." Id. at ¶ 46. Accordingly, "on June 10, 2009, Judge Beach ordered Dandar to cease his representation of all parties against Scientology other than the plaintiff in the now dismissed McPherson action."

Id.   Dandar appealed this order to Florida's Second District Court of Appeal, and on November 13, 2009, the appellate court per curiam affirmed Judge Beach's order. Id. at ¶ 47.

On February 19, 2010, upon Dandar's failure to withdraw from the Brennan action, "Judge Beach heard Scientology's motion to enforce his order of June 10, 2009, and Dandar's motion to void the settlement agreement." Id. at ¶ 49.  On April 12, 2010, "at the behest of Scientology, Pope, and in furtherance of the conspiracy," Judge Beach found Dandar in civil contempt of his June 10, 2009, order, directed Dandar to pay damages, and further ordered Dandar to file a motion to withdraw in the Brennan action.  Id.

"In compliance with Judge Beach's order, Dandar immediately filed in the Brennan . . . case a motion entitled 'Unopposed Involuntary Motion to Withdraw as Counsel for Plaintiff.'"  Id. at ¶ 50.  On April 22, 2010, the district court denied Dandar's motion to withdraw.  Id. at ¶ 51.  On May 6, 2010, "Judge Beach, as demanded by Defendants, and in furtherance of the conspiracy," directed Dandar to appear personally and to show cause as to why he and the Dandar Law Firm should not be held in indirect criminal contempt of his prior orders . . . , citing

Dandar's 'involuntary' motion to withdraw in federal court as a willful violation of his prior orders." Id.

On August 25, 2010, Dandar filed an emergency motion on behalf of the Brennan estate in the federal action "seeking a permanent injunction against Scientology and, if necessary, Judge Beach, to prohibit their interference with the federal court's orderly progression of the case." Id. at ¶ 52. The district court denied that motion on August 30, 2012. Id. On August 31, 2010, Judge Beach held a hearing which resulted in additional sanctions against Dandar for failing to withdraw from the Brennan matter. Id. at ¶ 53. On September 2, 2010, Dandar filed a second emergency motion on behalf of the Brennan estate "for a permanent injunction against Judge Beach and the Defendants, including a request for sanctions against Scientology." Id. at ¶ 54. This time, the district court granted the motion. Id. at ¶ 57. On October 13, 2010, Judge Beach recused himself from any further proceedings involving Dandar. Id. at ¶ 60.

Scientology appealed to the Eleventh Circuit the district court's order granting the injunction, and the Eleventh Circuit reversed and vacated that injunction in July of 2011. Id. at ¶ 61. Dandar, on behalf of the

7

Brennan estate, "brought a petition for certiorari to the United States Supreme Court seeking review of the decision of the Court of Appeals for the Eleventh Circuit, but it was denied on February 21, 2012." Id. at ¶ 68.

Meanwhile, Dandar appealed Judge Beach's April 12, 2010, order imposing sanctions against him to Florida's Second District Court of Appeal. Id. at ¶ 63. On February 11, 2011, the appellate court upheld Judge Beach's April 12, 2010, order in all respects with the exception of a damages award imposed in error. Id. at ¶ 64. On May 20, 2011, "Dandar filed a petition for writ of prohibition with the Florida Supreme Court seeking an order directing the Second District Court of Appeal to issue an order recognizing that the circuit court was without jurisdiction to enter any order subsequent to the joint voluntary dismissal with prejudice filed on June 8, 2004, and that it exceeded its jurisdiction by imposing a practice restriction and orders of criminal contempt of court." Id. at ¶ 65. Dandar explains that the "Florida Supreme Court transferred the petition to the Florida Court of Appeal for the Second District which denied it." Id. On September 6, 2011, the state appellate court denied Dandar's petitions for rehearing. Id. at ¶ 66.

On October 3, 2011, the district court granted Dandar's motion to withdraw nunc pro tunc to April 12, 2010. Id. at ¶ 67. On October 10, 2011, Scientology moved in Pinellas County Circuit Court "for the award of attorney's fees, damages and other relief incident to the contempt against Dandar and the Dandar Law Firm for breaching the settlement agreement" pursuant to Florida Rule of Civil Procedure 1.730(c). Id. at ¶ 69.

After Judge Beach's recusal, the Honorable Crockett Farnell assumed jurisdiction over the state court action. Id. at ¶ 71. In July of 2012, Judge Farnell found that, in accordance with Rule 1.730(c), Scientology was entitled to all reasonable fees and costs incurred since Dandar's filing of the Brennan complaint on February 12, 2009. Id.

On October 31, 2012, Dandar filed the instant Section 1983 action, alleging that Defendants' conduct constitutes a violation of Dandar's constitutional rights (Doc. # 1), and concurrently filed an emergency motion for preliminary injunction "to prohibit Defendants from proceeding to any hearing . . . to obtain any further state order and/or state judgment against Plaintiffs until this court has addressed the Defendants' violations of 42 U.S.C. § 1983 . . . ." (Doc. # 2 at 1). Finding that Dandar failed to

establish a substantial likelihood of success on the merits of his Section 1983 claim, this Court denied the motion for preliminary injunction on November 20, 2012.  (Doc. # 23). Dandar filed an Amended Complaint (Doc. # 24) on November 22, 2012, and a second motion for preliminary injunction (Doc. # 25) on November 23, 2012.  Again finding that Dandar failed to demonstrate a substantial likelihood of success on the merits of his claims against Defendants, the Court denied Dandar's second motion for preliminary injunction on December 17, 2012.  (Doc. # 38).  At the December 7, 2012, hearing on the second motion for preliminary injunction, the Court granted Dandar leave to file a Second Amended Complaint.  (Doc. # 37).

On November 26, 2012, the state court conducted a final hearing on the amount of Scientology's relevant attorney's fees and costs.  (Doc. # 45 at ¶ 73).  Dandar filed a Second Amended Complaint on January 7, 2013, seeking equitable and monetary relief under the Declaratory Judgment Act (Count I) and 42 U.S.C. § 1983 (Count II).  On January 18, 2013, Defendants filed a motion to dismiss Dandar's Second Amended Complaint.  (Doc. # 48).  Dandar filed a response in opposition to the motion on January 31, 2013.  (Doc. # 54).

II.  **Legal Standard**

In reviewing a motion to dismiss, a trial court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff.  <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).  However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In <u>Bell Atlantic Corp. v. Twombly</u>, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted).

In accordance with <u>Twombly</u>, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  A plausible claim for relief must include "factual content [that]

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Court notes that the present motion to dismiss has not been converted into a motion for summary judgment in accordance with Federal Rule of Civil Procedure 12(c) because the Court has not considered matters outside the pleadings. "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Court may consider the various exhibits attached to the Complaint without converting the motion to dismiss into one for summary judgment.

**III. Discussion**

Notably, the Court did not scrutinize either the original complaint or the first amended complaint in this action according to the legal standard applicable to a motion to dismiss. The Court's only substantive Orders in this matter (Doc. ## 23, 38) instead have applied the four-part analysis for evaluating a motion for preliminary injunction. Pursuant to that analysis, the Court found on

both occasions that Dandar had not demonstrated "a substantial likelihood of success on the merits," among other deficiencies. Id. Accordingly, despite Defendants' characterization to the contrary (Doc. # 48 at 11), this is the Court's first evaluation of the instant action through the lens of a motion to dismiss.

### A. Rooker-Feldman

In the motion to dismiss, Defendants argue that both the Rooker-Feldman doctrine and the Younger abstention doctrine apply to this case. Id. at 4.

Defendants contend that Rooker-Feldman applies "with respect to the state court decisions interpreting and enforcing the disengagement provision of the settlement agreement between the Dandars and the Church, [as] such issues have been finally decided by the applicable Florida appellate court." Id. at 4-5. Defendants further reason that "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Id. at 5 (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)).

The Court finds this principle inapplicable to the present case.  The Third Circuit's explanation in Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 171 (3d Cir. 2010) is helpful in illustrating this point: If Dandar were "merely claiming that the decision[s] of the state court [were] incorrect or that the decision[s] [themselves] violated his constitutional rights[,] such claims would be barred."  Instead, because Dandar's Section 1983 claim alleges that "'people involved in the decision violated some independent right of his . . . then [Dandar can], without being blocked by the Rooker-Feldman doctrine, sue to vindicate that right.'"  Id. (quoting Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995)) (emphasis added).  Great Western further explains that "if Rooker-Feldman barred jurisdiction, there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment." Great Western, 615 F.3d at 172 (internal quotations omitted).

In both Great Western and Nesses, the plaintiff alleged that the defendant conspired with the state judiciary to rule in the defendant's favor.  As Great

14

Western noted, "[t]he alleged agreement to reach a predetermined outcome in a case would itself violate [the plaintiff's] constitutional rights, independently of the subsequent state-court decisions." Id. (citing Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.")). Thus, because Defendants' separate constitutional violations, rather than the state judgments themselves, are the cause of Dandar's alleged injuries, the Rooker-Feldman doctrine does not deprive this Court of jurisdiction over Dandar's Section 1983 claim. However, this determination does not necessarily enable the Court to provide the equitable relief Dandar seeks.

### B. *Younger* Abstention

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). However, this obligation coexists with Congress's manifest "desire to permit state courts to try state cases free from interference by federal courts." Younger v. Harris, 401 U.S. 37, 43 (1971).

"Younger v. Harris . . . and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). "The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Id. at 432. "Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Where vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." Id. (internal citations and quotations omitted). "The pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims." Id. (internal quotations omitted).

Thus, the Supreme Court in Middlesex County articulated a three-part test for determining whether Younger abstention is required: (1) whether there is an ongoing state proceeding that is judicial in nature, (2) whether the proceeding implicates important state

16

interests, and (3) whether there is an adequate opportunity in the state proceeding to raise constitutional challenges. Id. at 432-37.  Abstention would be inappropriate, however, upon a "showing of bad faith, harassment, or some other extraordinary circumstance" justifying intervention of a federal court.  Id. at 435.

Notably, in accordance with Samuels v. Mackell, 401 U.S. 66, 73 (1971), the principles of Younger also apply to "declaratory judgments that would effectively enjoin state proceedings."  Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc., 124 F.3d 1258, 1261 (11th Cir. 1997) (internal citations omitted).

To the extent that the relevant state proceedings remain ongoing, Younger abstention is appropriate in this case.  First of all, the state proceedings relating to judicial enforcement of Florida Rule of Civil Procedure 1.730(c) are certainly judicial in nature, as Dandar awaits imposition of a judgment by the Circuit Court of Pinellas County, Florida.

Secondly, the Court determines that the state proceedings implicate an important state interest.  "The importance of a state interest may be demonstrated by the fact that . . . the proceedings are necessary for the

17

vindication of important state policies or the functioning of the state judicial system." First Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc., 825 F.2d 1475, 1484 (11th Cir. 1987). In Parsons Steel, the Eleventh Circuit found that Younger abstention did not apply to a case involving allegations of fraud and violations of the Bank Holding Company Act arising out of a series of transactions between a bank and its corporate client. Id. at 1477-78. The Eleventh Circuit reasoned that "Alabama is not a party to the action enjoined in this case, nor was that action brought to vindicate important interests of that State. Similarly, the action does not implicate the State's important interests in administering certain aspects of its judicial system." Id. at 1483.

The Court recognizes that this case, like Parsons Steel, involves only private litigants and was not brought -- at least not directly -- with the aim of vindicating important interests of the state. Rather, Dandar brought this action to avoid imposition of "a punitive monetary judgment, certain to destroy his ability to seek his livelihood," (Doc. # 45 at 5), and has not directly challenged a state statute or procedural rule in doing so.

However, the Supreme Court's reasoning in Juidice v. Vail, 430 U.S. 327 (1977) underscores the importance to the states of enforcing the orders and judgments of their courts. In Juidice, the Supreme Court applied Younger to a Section 1983 action in which an individual was held in contempt of court by the County Court of Dutchess County, New York, for failing to comply with a subpoena requiring his appearance at a deposition. Id. at 328-29. That individual, Harry Vail, thereafter filed an action in the United States District Court for the Southern District of New York seeking to enjoin "the use of the statutory contempt procedures authorized by New York law and employed by appellant justices on the ground that the procedures . . . violated the Fourteenth Amendment to the United States Constitution." Id. at 330.

Referring to the reasoning of Ex parte Young, 209 U.S. 123 (1908), that "the Federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court," the Supreme Court determined that this same principle applied in Juidice. 430 U.S. at 335. The Supreme Court explained that "[a] state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so

long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest." Id. Additionally, the Court noted that federal-court interference with the state's contempt process "not only 'unduly interfere(s) with the legitimate activities of the stat(e),' but also 'can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" Id. at 336 (quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 601, 604 (1975)).

Applying the principles outlined in Juidice, the Supreme Court in Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13-14 (1987), reasoned that "[t]here is little difference between the State's interest in forcing persons to [act] in response to a court's judgment and in forcing persons to respond to the court's process on pain of contempt." In Pennzoil, Pennzoil obtained a jury verdict in state court against Texaco amounting to nearly $11 billion. Id. at 4. Before the state court entered judgment, Texaco filed an action in the United States District Court for the Southern District of New York challenging a Texas law permitting a judgment creditor to secure and execute a lien on a judgment debtor's property unless the debtor filed a bond

in at least the amount of the judgment, interest, and costs. Id. at 4-5. Unable to post the bond (which, in accordance with the Texas law, would have amounted to more than $13 billion), Texaco "asked the District Court to enjoin Pennzoil from taking any action to enforce the judgment." Id. at 6. The district court granted injunctive relief, and the Second Circuit affirmed, finding that "abstention was unnecessary." Id. at 7-9.

The Supreme Court, however, found that "[t]he courts below should have abstained under the principles of federalism enunciated in Younger v. Harris." Id. at 10. The Supreme Court explained that the district court's decision implicated a vital state interest in that "States have important interests in administering certain aspects of their judicial systems," and compared the case to Juidice, reasoning that "both [cases] involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the executions of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained." Id. at 12-14.

In the instant case, Dandar has framed his Complaint as an action against private individuals based on Section 1983 and the Declaratory Judgment Act. However, the relief Dandar seeks is identical to the relief prohibited by _Younger_ as interpreted by _Juidice_ and _Pennzoil_. That is, Dandar asks this Court to enjoin a state court from executing a state judgment on grounds that the state judiciary has imposed that judgment unconstitutionally. Because administering certain aspects of a state judicial system constitutes an important state interest, and because the state proceedings in this case seek to finalize the relevant judgment premised upon a Florida Rule of Civil Procedure,[1] the Court finds that the ongoing state proceedings in this matter implicate important state interests.

Lastly, for _Younger_ abstention to apply, the Court must determine whether there is an adequate opportunity in the state proceeding to raise constitutional challenges.

---

[1] Florida Rule of Civil Procedure 1.730, which serves as the predicate for Judge Farnell's ruling awarding attorneys' fees and costs to Scientology, is entitled "Completion of Mediation." That rule provides in relevant part: "In the event of any breach or failure to perform under the agreement, the court upon motion may impose sanctions, including costs, attorneys' fees, or other appropriate remedies including entry of judgment on the agreement." Fla. R. Civ. P. 1.730(c).

_Middlesex County_, 457 U.S. at 435.   Dandar has cited no statute or case indicating that Florida's state courts lack the power to consider his constitutional challenges. Indeed, Dandar appealed to Florida's Second District Court of Appeal Judge Beach's June 10, 2009, order directing Dandar to cease representation in the _Brennan_ matter, and also appealed Judge Beach's April 12, 2010, order finding Dandar in civil contempt and imposing sanctions.   (Doc. # 45 at 20, 26).   Dandar offers no explanation as to why his constitutional challenges relating to these orders were not raised on appeal.   Rather, Dandar explains that, in appealing the June 10, 2009, order, he argued that the settlement agreement was unenforceable as interpreted by Judge Beach because it "(1) violates the Rules Regulating the Florida Bar; (2) is contrary to a Florida Bar published Ethics Opinion . . . [(3)] is void based on Florida public policy; and [(4)] is contrary to both state and Florida federal case law." _Id._ at 20.   In appealing the April 12, 2010, order, Dandar argued "that the Circuit Court for Pinellas County lacked subject matter jurisdiction over the [settlement agreement] to enforce its provisions; that the agreement cannot be construed as a practice restriction since that would be void as violative of the Rules

Regulating the Florida Bar; that only the Supreme Court of Florida can place restrictions on a lawyer's practice of law; and that Dandar cannot be held in contempt of an order to withdraw from the federal case where the federal district court judge denied his motion to do just that." Id. at 26.

Thus, Dandar apparently opted not to challenge either order on constitutional grounds, yet in the instant action Dandar refers to the June 10, 2009, order as his "unconstitutional removal from the Brennan Action," id. at 32, and refers to the April 12, 2010, order imposing contempt proceedings and resulting in sanctions to be "unfair, punitive and unconstitutional," id. at 33. Without any indication to the contrary, the Court finds that there was an adequate opportunity in the state proceeding for Dandar to have raised his constitutional challenges, and thus that Younger abstention applies in this case.

### 1. *Younger* Exceptions Inapplicable

The Supreme Court in Younger explained that abstention might be inappropriate in cases of bad faith or harassment, or under other "extraordinary circumstances in which the

necessary irreparable injury can be shown." <u>Younger</u>, 401 U.S. at 53.

The Supreme Court determined that the bad faith exception did not apply in <u>Juidice</u> because the exception was neither "alleged in appellees' complaint [n]or proved by their evidence," and, although the complaint "could be construed to make such allegations as to the creditors, there are no comparable allegations with respect to appellant justices who issues the contempt orders." <u>Id.</u> The Supreme Court further explained that "[t]he exception may not be utilized unless it is alleged and proved that they are enforcing the contempt procedures in bad faith or are motivated by a desire to harass." <u>Id.</u>

In determining whether such an exception applies in the instant action, the Court notes that subsequent cases have revealed the <u>Younger</u> exceptions to be extremely limited in scope. The Supreme Court in <u>Moore v. Sims</u>, 442 U.S. 415, 433 (1979), explained that "[t]he most extensive explanation of those 'extraordinary circumstances' that might constitute great, immediate, and irreparable harm is that in <u>Kugler v. Helfant</u>, 421 U.S. 117 (1975). Although its discussion is with reference to state criminal

proceedings, it is fully applicable in this context as well[:]"

> Only if extraordinary circumstances render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process. The very nature of extraordinary circumstances, of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be extraordinary in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

Moore, 442 U.S. at 433 (quoting Kugler, 421 U.S. at 124-25).

Dandar does not argue in response to Defendants' motion to dismiss that an exception to Younger abstention should apply in this case. Instead, Dandar erroneously dismisses the prospect of Younger abstention by stating that "[b]ecause this instant matter was filed before any final judgment in the state court, neither Rooker-Feldman nor the Younger doctrine require dismissal or abstention." (Doc. # 54 at 3).

The Court finds that, even if Dandar's conspiracy allegations were sufficient to bring the conduct of Judge

Beach, and, by extension, the state court proceedings over which he presided, within the intended meaning of "bad faith" for purposes of the <u>Younger</u> exception, Dandar has still failed to allege that the state proceedings were entirely adjudicated by courts incapable of fully and fairly considering the federal issues before them.  That is, Dandar alleges that the conspiracy involved only the private Defendants and Judge Beach.  Dandar has not alleged that the judges of Florida's Second District Court of Appeal or the Florida Supreme Court, in reviewing Judge Beach's relevant determinations, have engaged in similar misconduct.  Thus, this Court finds that Dandar has failed to allege such extraordinary circumstances that would warrant federal intervention in the state proceedings. Thus, the Court finds that no exception to the <u>Younger</u> abstention doctrine applies in this case, and that the Court must therefore permit the state court to proceed without federal judicial interference.

### 2. <u>Additional Considerations Favoring Abstention</u>

In determining that <u>Younger</u> abstention applies in this case, the Court finds persuasive certain cases in other jurisdictions applying <u>Younger</u> where a plaintiff alleged in a Section 1983 action that a state judge, or private

individuals conspiring with a state judge, deprived the plaintiff of his constitutional rights.  See, for example, Nilsson v. Ruppert, Bronson & Chicarelli Co., L.P.A., 888 F.2d 452, 454 (6th Cir. 1989) ("Although the state case involves only private parties, it is Nilsson's allegation of a conspiracy involving the subversion of Ohio's legal system that is the genesis of the constitutional claims made in the present case, and it is in the resolution of these claims that Ohio has a great interest . . . . [Thus,] we find that the Younger doctrine applies . . . ."), and Tast v. Dean, 182 F. App'x 748, 749-50 (10th Cir. 2006) (finding that the Younger abstention doctrine precluded a district court's adjudication of a Section 1983 claim filed by a plaintiff against the state court judge then-presiding over the plaintiff's state tort action).

Additionally, this Court is mindful of the Eleventh Circuit's recent warning regarding enjoining the state court proceedings related to this very action.  In Estate of Brennan v. Church of Scientology Flag Service Organization, 645 F.3d 1267 (11th Cir. 2011), the Eleventh Circuit vacated an injunction premised on the All Writs Act entered by another district court.  Although this Court recognizes that the anti-injunction statute at issue in the

Brennan decision would not necessarily operate to bar this Court's issuance of an injunction pursuant to Section 1983, the Court finds the Eleventh Circuit's general warning equally applicable in this case: "a district court['s] conviction that a state proceeding has reached or is reaching an erroneous result does not alone warrant an injunction against those proceedings." Id. at 1277. Thus, irrespective of this Court's convictions regarding the proceedings imposing sanctions against Dandar in state court, an injunction cannot issue where abstention is appropriate.

## IV. **Declaratory Judgment Act**

Dandar lists the following as "Claims for Relief" under Count I of the Complaint:

> (a) For a declaration that Plaintiffs cannot be sanctioned by a state court for filing and participating in a federal action, whether or not the filing of the federal action is in breach of a private settlement agreement;

> (b) For an order requiring [Scientology] to terminate the state proceedings;

> (c) For an emergency preliminary order with a subsequent permanent order enjoining [Scientology], its agents or attorneys, and anyone acting in concert for it, including any other Scientology entity, from pursuing the state court action and/or instituting any action against

Plaintiffs with respect to the subject matter of this action; [and]

(d) For Plaintiffs' damages, both compensatory and punitive; . . . .

(Doc. # 45 at 5).

As the Supreme Court commented in Pennzoil, "the States have important interests in administering certain aspects of their judicial systems." 481 U.S. at 12-13. A declaratory judgment issued by this Court "requiring Scientology to terminate the state proceedings" (Doc. # 45 at 5) would effectively enjoin the state court proceedings entirely, thus interfering with the execution of a state court judgment and correspondingly hindering the administration of the state judicial system. The Court finds that impermissible interference would result from granting any of Dandar's claims for relief under Count I. Accordingly, Younger abstention applies to the declaratory relief sought, Old Republic, 124 F.3d at 1261, and the Court grants Defendants' motion to dismiss as to Count I.

## V.   42 U.S.C. § 1983

Within Count II of the Complaint, Dandar lists the following "Claims for Relief":

(a) Enter preliminary and permanent injunctions enjoining the Defendants, their officers, employees, agents,

30

attorneys and successors, and all persons in active concert or participating with any of them, from actively assisting the state judges or courts in their efforts to interfere with the Plaintiffs' rights by filing any suit based on the [Settlement Agreement], by conducting any further hearings, or entry of any additional orders or judgments, and enjoining the execution of any judgment.

(b)   Grant trial by jury.

(c)   Award compensatory damages against each Defendant.

(d)   Award punitive damages against each defendant.

(e)   Enter a declaratory judgment declaring that the Defendants' actions violated the Plaintiffs' First, Fifth, Sixth, and Fourteenth Amendment rights.

(Doc. # 45 at 33).

As discussed above, the Court finds that Younger abstention requires dismissal of Dandar's federal claims for declaratory and injunctive relief. However, to the extent that Dandar seeks damages against the Defendants under Section 1983, Younger is not necessarily a jurisdictional bar. See Deakins v. Monaghan, 484 U.S. 193, 202 (1988) (reserving the issue as to whether Younger applies to Section 1983 damages actions); Doby v. Strength, 758 F.2d 1405, 1406 (11th Cir. 1985) (applying Younger and ordering a stay, rather than dismissal, of a Section 1983

damages claim); <u>Rossi v. Gemma</u>, 489 F.3d 26, 37 (1st Cir. 2007) ("[O]ur circuit has determined that <u>Younger</u> can in fact be applicable to damages actions in appropriate cases.").

The Supreme Court in <u>Deakins</u> found that the "Third Circuit['s] rule that requires a District Court to stay rather than dismiss claims that are not cognizable in the parallel state proceeding . . . is sound.  It allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists."  <u>Deakins</u>, 484 U.S. at 202-03.  This Court thus abstains from resolving the merits of Dandar's Section 1983 claim for damages, and accordingly stays this claim, pending the completion of the state court proceedings.

**VI.  <u>Leave to Amend</u>**

In responding to Defendants' motion to dismiss, Dandar requested leave to file a third amended complaint in order "to add Count III for violation of 42 U.S.C. § 1985(2)." (Doc. # 54 at 1).  "A decision whether to grant a motion for leave to amend a complaint is within the discretion of the district court."  <u>Senger Bros. Nursery, Inc. v. E.I.</u>

Dupont de Nemours & Co., 184 F.R.D. 674, 678 (M.D. Fla. 1999).    Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend] when justice so requires."   The Supreme Court has emphasized that

> [i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).   The Eleventh Circuit has found that "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."   Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) (internal quotations omitted).

Section 1985, entitled "Conspiracy to interfere with civil rights," provides, in relevant part:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment

of any grand or petit juror in any such court, or
to injure such juror in his person or property on
account of any verdict, presentment, or
indictment lawfully assented to by him, or of his
being or having been such juror; or if two or
more persons conspire for the purpose of
impeding, hindering, obstructing, or defeating,
in any manner, the due course of justice in any
State or Territory, with intent to deny to any
citizen the equal protection of the laws, or to
injure him or his property for lawfully
enforcing, or attempting to enforce, the right of
any person, or class of persons, to the equal
protection of the laws[,]

and provides that if the conspirators do act in furtherance

of such a proscribed conspiracy, "the party so injured or

deprived may have an action for the recovery of damages[.]"

42 U.S.C. § 1985(2)-(3).

The conspiracy in this case, as alleged by Dandar,

involves no attempt to "deter, by force, intimidation, or

threat, any party or witness in any court of the United

States." Id. § 1985(2). Dandar apparently urges this

Court to find that Scientology's motion to enforce the

Settlement Agreement (upon Dandar's filing of the Brennan

action) constitutes a "threat" to deter Dandar from

"attending court." (Doc. # 54 at 4-5). However, Dandar

was neither a party nor a witness in the Brennan matter.

Dandar argues that "[o]f course, Dandar was the agent of

the [Brennan] party . . . and as the party is protected, so

too [is] the party's agent." Id. at 5.   Dandar, however,
cites no authority for his proposition that the right to
bring a Section 1985 action for the recovery of damages
extends to a party's counsel who, without obstructing the
party's own ability to proceed with a federal action, was
forced to withdraw as counsel.[2]

Accordingly, because this Court finds that Dandar's
proposed amendment based on Section 1985(2) would be
futile, the Court declines to grant Dandar leave to file a
third amended complaint.

## VII. Conclusion

"Minimal respect for the state processes . . .
precludes any presumption that the state courts will not
safeguard federal constitutional rights." Middlesex County
Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423,
431 (1982).   The Court finds that the relief sought by
Dandar under Count I of the Second Amended Complaint would
effectively enjoin the state court proceedings, and
therefore that this Court must abstain, in accordance with

---

[2] Dandar explains that "this is exactly what happened in
Donovan, protection of the party and the party's counsel,"
citing Donovan v. City of Dallas, 377 U.S. 408 (1964).
However, Donovan did not involve a claim under Section
1985, and Dandar offers no further explanation on this
point.

Younger, from adjudicating Dandar's Declaratory Judgment Act claims.   The Court thus grants Defendants' motion to dismiss as to Count I.   Similarly, the Court finds that Younger abstention is appropriate with regard to Dandar's claims for injunctive and declaratory relief under Section 1983.   The Court thus grants Defendants' motion to dismiss to the extent that Dandar seeks injunctive and declaratory relief under Count II.   However, to the extent that Dandar's Second Amended Complaint states a claim for damages against Defendants under Section 1983, Defendants' motion to dismiss is denied, and Dandar's claim for damages under Section 1983 is stayed pending the outcome of the state court proceedings.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion to Dismiss (Doc. # 48) is **GRANTED in part and DENIED in part** as detailed herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of February, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record.

36