UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNAN G. DANDAR and
DANDAR & DANDAR, P.A.,

      Plaintiffs,

v.                                    Case No. 8:12-cv-2477-T-33EAJ

CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, INC.,
F. WALLACE POPE, JR., JOHNSON
POPE BOKOR RUPPEL & BURNS LLP,
and DAVID MISCAVIGE,

      Defendants.

_____/

## ORDER

This cause comes before the Court pursuant to the United States Court of Appeals for the Eleventh Circuit's Opinion issued December 19, 2013 (Doc. # 74), and Mandate issued January 22, 2014 (Doc. # 75). The parties filed their briefs in this matter on February 14, 2014 (Doc. ## 81, 82), and the Court held a hearing on May 19, 2014 (Doc. # 90). In accordance with the Eleventh Circuit's instruction, the present Order reconsiders the disposition of Counts I and II of Dandar's second amended complaint in light of Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584 (2013). For the reasons that follow, the Court finds that abstention remains appropriate.

I.   **Background**

   A.   **The Alleged Conspiracy**

Beginning in 1997, Plaintiff Kennan Dandar represented the Estate of Lisa McPherson in a wrongful death action against Defendant Church of Scientology Flag Service Organization in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. (Doc. # 45 at ¶ 22). Dandar alleges that Defendant David Miscavige, who Dandar describes as "the worldwide supreme leader over all Scientology entities," (id. at ¶ 19), retained Defendant Johnson Pope Bokor Ruppel & Burns LLP in the McPherson case "due to [the law firm's] political connections in Clearwater and Pinellas County" (id. at ¶ 24).

The presiding judge in the McPherson matter, the Honorable Robert Beach, though not joined as a defendant in this action, is alleged to have conspired with the private Defendants to violate Dandar's "rights under the First, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution." (Id. at ¶ 79). Dandar claims that "Scientology's counsel, after meeting many times with Judge Beach ex parte to gather sympathy for Scientology in the wrongful death case, defamed Dandar in his business reputation and goodwill, and pursuant to a game plan

2

previously concocted by . . . Miscavige and Scientology, convinced Judge Beach to contrive a defective and illegal procedure . . . to make the McPherson case go away by simply removing Dandar as counsel for the Estate in the wrongful death case." (Id. at ¶ 28). Judge Beach allegedly "joined in this plan and agreed to remove Dandar as lead counsel for the McPherson estate." (Id.).

Despite having been removed as lead counsel, Dandar appeared at the May 26, 2004, mediation conference scheduled in the McPherson action. (Id. at ¶ 33). According to Dandar, "Scientology, through Pope, refused to mediate the McPherson wrongful death case, and instead insisted on a 'global settlement conference' encompassing not only the court ordered mediation for the McPherson case, but also the myriad of cases brought by Scientology and related entities against Dandar, Dell Liebreich, or the estate." (Id.). During the mediation, "Dandar agreed to a global settlement, releasing any claim he had against Scientology at that time . . . by executing a Release . . . so that the Estate of Lisa McPherson could go forward with a settlement." (Id.). Also at the conference, Dandar ultimately signed (though, Dandar insists, not in his individual capacity, but rather as "counsel") a settlement agreement including a provision the parties refer

to as the "disengagement clause," which provides, in relevant part:

> The McPherson Parties agree to a full, permanent disengagement from the Scientology Parties, including no further anti-Scientology activity, and no involvement in any adversarial proceedings of any description against the Scientology Parties under any circumstances at any time.

(Id. at ¶ 37).

Dandar, his law partner Thomas J. Dandar, and their law firm, Dandar & Dandar, P.A., were included within the settlement agreement's definition of "the McPherson Parties." (Id. at ¶ 34). "The McPherson case was dismissed on June 8, 2004, by the filing of a Joint Voluntary Dismissal With Prejudice." (Id. at ¶ 36).

Nearly five years later, on February 13, 2009, Dandar filed another wrongful death action against Scientology, this time on behalf of the Estate of Kyle Brennan, in the United States District Court for the Middle District of Florida. (Id. at ¶ 40). In response to Dandar's perceived breach of the settlement agreement, "Defendants filed a motion [to enforce the settlement agreement] in the closed case of McPherson." (Id. at ¶ 43).

Dandar contends that, "as part of the conspiracy with Defendants," Judge Beach held that the disengagement

4

provision "prohibited Dandar's representation of the Brennan Estate in federal court, and that this prohibition was enforceable." (Id. at ¶ 46). Accordingly, "on June 10, 2009, Judge Beach ordered Dandar to cease his representation of all parties against Scientology other than the plaintiff in the now dismissed McPherson action." (Id.). Dandar appealed this order to Florida's Second District Court of Appeal, and on November 13, 2009, the appellate court per curiam affirmed Judge Beach's order.  (Id. at ¶ 47).

On February 19, 2010, upon Dandar's failure to withdraw from the Brennan action, "Judge Beach heard Scientology's motion to enforce his order of June 10, 2009, and Dandar's motion to void the settlement agreement." (Id. at ¶ 49).  On April 12, 2010, "at the behest of Scientology, Pope, and in furtherance of the conspiracy," Judge Beach found Dandar in civil contempt of his June 10, 2009, order, directed Dandar to pay damages, and further ordered Dandar to file a motion to withdraw in the Brennan action.  (Id.).

"In compliance with Judge Beach's order, Dandar immediately filed in the Brennan . . . case a motion entitled 'Unopposed Involuntary Motion to Withdraw as Counsel for Plaintiff.'" (Id. at ¶ 50).  On April 22, 2010, the district court denied Dandar's motion to withdraw.  (Id. at ¶ 51).  On

May 6, 2010, "Judge Beach, as demanded by Defendants, and in furtherance of the conspiracy," directed Dandar to appear personally and to show cause as to why he and the Dandar Law Firm should not be held in indirect criminal contempt of his prior orders . . . , citing Dandar's 'involuntary' motion to withdraw in federal court as a willful violation of his prior orders." (Id.).

On August 25, 2010, Dandar filed an emergency motion on behalf of the Brennan estate in the federal action "seeking a permanent injunction against Scientology and, if necessary, Judge Beach, to prohibit their interference with the federal court's orderly progression of the case." (Id. at ¶ 52). The district court denied that motion on August 30, 2012. (Id.). On August 31, 2010, Judge Beach held a hearing which resulted in additional sanctions against Dandar for failing to withdraw from the Brennan matter. (Id. at ¶ 53). On September 2, 2010, Dandar filed a second emergency motion on behalf of the Brennan estate "for a permanent injunction against Judge Beach and the Defendants, including a request for sanctions against Scientology." (Id. at ¶ 54). This time, the district court granted the motion. (Id. at ¶ 57). On October 13, 2010, Judge Beach recused himself from any further proceedings involving Dandar. (Id. at ¶ 60).

Scientology appealed to the Eleventh Circuit the district court's order granting the injunction, and the Eleventh Circuit reversed and vacated that injunction in July of 2011. (Id. at ¶ 61). Dandar, on behalf of the Brennan estate, "brought a petition for certiorari to the United States Supreme Court seeking review of the decision of the Court of Appeals for the Eleventh Circuit, but it was denied on February 21, 2012." (Id. at ¶ 68).

Meanwhile, Dandar appealed Judge Beach's April 12, 2010, order imposing sanctions against him to Florida's Second District Court of Appeal. (Id. at ¶ 63). On February 11, 2011, that court upheld Judge Beach's April 12, 2010, order in all respects with the exception of a damages award imposed in error. (Id. at ¶ 64). On May 20, 2011, "Dandar filed a petition for writ of prohibition with the Florida Supreme Court seeking an order directing the Second District Court of Appeal to issue an order recognizing that the circuit court was without jurisdiction to enter any order subsequent to the joint voluntary dismissal with prejudice filed on June 8, 2004, and that it exceeded its jurisdiction by imposing a practice restriction and orders of criminal contempt of court." (Id. at ¶ 65). Dandar explains that the "Florida Supreme Court transferred the petition to the Florida Court

7

of Appeal for the Second District which denied it." (Id.).
On September 6, 2011, the state appellate court denied
Dandar's petitions for rehearing. (Id. at ¶ 66).

On October 3, 2011, the district court granted Dandar's
motion to withdraw nunc pro tunc to April 12, 2010. (Id. at
¶ 67). On October 10, 2011, Scientology moved in Pinellas
County Circuit Court "for the award of attorney's fees,
damages and other relief incident to the contempt against
Dandar and the Dandar Law Firm for breaching the settlement
agreement" pursuant to Florida Rule of Civil Procedure
1.730(c). (Id. at ¶ 69).

After Judge Beach's recusal, the Honorable Crockett
Farnell assumed jurisdiction over the state court action.
(Id. at ¶ 71). In July of 2012, Judge Farnell found that, in
accordance with Rule 1.730(c), Scientology was entitled to
all reasonable fees and costs incurred since Dandar's filing
of the Brennan complaint on February 12, 2009. (Id.).

B.   **Procedural History in the Present Case**

On October 31, 2012, Dandar and his law firm, Dandar &
Dandar P.A. (collectively referred to herein as "Dandar"),
initiated the present action against the Church of
Scientology Flag Service Organization, Inc., F. Wallace Pope
Jr., Robert Potter Jr., the law firm of Johnson Pope Bokor

Ruppel & Burns, LLP, and David Miscavige. Dandar's complaint, entitled "Verified Complaint for Emergency Preliminary and Permanent Injunctive Relief, Declaratory Judgment, Damages, and Demand for Jury Trial" (Doc. # 1), sought to prevent the occurrence of a final hearing in state court on the amount of attorney's fees and costs owed to Scientology as a consequence of Dandar's violation of the McPherson settlement agreement. Dandar characterized his claim for relief as a civil rights action pursuant to 42 U.S.C. § 1983. (Id. at 1).

Contemporaneously with this complaint, Dandar filed an emergency motion for preliminary injunction (Doc. # 2), in which Dandar requested the issuance of an injunction "[t]o prohibit Defendants . . . from proceeding to any hearing, including the one scheduled on November 26, 2012, . . . until this Court has addressed the Defendants' violations of [Section] 1983." (Id. at 1). After a hearing, the Court denied Dandar's motion for preliminary injunction on November 20, 2012. (Doc. # 23). Specifically, the Court found that Dandar had failed to demonstrate a substantial likelihood of success on the merits of his Section 1983 claim due to the lack of allegations establishing state action on behalf of the private Defendants. (Id. at 10-18).

On November 22, 2012, Dandar filed an amended complaint (Doc. # 24), shortly followed by an amended motion for preliminary injunction (Doc. # 25). This time, the amended complaint repeatedly referred to an alleged conspiracy between the private Defendants and certain state actors. The complaint also purported to allege causes of action "pursuant to 42 U.S.C. § 1981 . . . § 1985, and § 1986." (Doc. # 24 at 2). Dandar's amended motion for preliminary injunction again asked the Court to prohibit Defendants from proceeding to any hearing or obtaining any further order against Dandar until the Court addressed the claims in Dandar's complaint. (Doc. # 25 at 1). The Court held a hearing on the amended motion for preliminary injunction on December 7, 2012. (Doc. # 37).

On December 17, 2012, the Court entered an Order once more denying Dandar's request for a preliminary injunction. (Doc. # 38). Specifically, the Court found that the allegations in Dandar's amended complaint were "conclusory" and "vague," and that they failed to allege a conspiracy between the Defendants and any relevant state actor. (Id. at 5). Given the high burden for alleging a Section 1983 claim against private defendants allegedly involved in a conspiracy with a state actor, the Court found Dandar's amended complaint insufficient to meet the pleading requirements – much less

10

sufficient to demonstrate a substantial likelihood of success on the merits.  (Id. at 4-5) (quoting Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992) ("[T]he plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the private person and the state actor. It is insufficient to merely string together discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights.")).

On January 7, 2013, Dandar filed his second amended complaint (Doc. # 45), which remains the operative complaint in this case.  The second amended complaint contains two counts, (1) "Declaratory Judgment Action" and (2) 42 U.S.C. § 1983, and lists the following "Claims for Relief," among others:

> For a declaration that Plaintiffs cannot be sanctioned by a state court for filing and participating in a federal action, whether or not the filing of the federal action is in breach of a private settlement agreement;
>
> *     *     *
>
> Enter preliminary and permanent injunctions enjoining the Defendants, their officers, employees, agents, attorneys and successors, and all persons in active concert or participating with any of them, from actively assisting the state judges or courts in their efforts to interfere with the Plaintiffs' rights by filing any suit based on

the [McPherson settlement agreement], by conducting
any further hearings, or entry of any additional
orders or judgments, and enjoining the execution of
any judgment.

* * *

Enter a declaratory judgment declaring that the
Defendants' actions violated the Plaintiffs' First,
Fifth, Sixth, and Fourteenth Amendment rights.

(Id. at 5, 33).

On January 18, 2013, Defendants filed a motion to dismiss
Dandar's second amended complaint with prejudice. (Doc. #
48). Defendants contended that both the Rooker-Feldman and
Younger doctrines mandated dismissal. (Id.). Essentially,
Defendants argued that under Rooker-Feldman this Court did
"not have jurisdiction to review the state court rulings
dealing with the interpretation and enforcement of the
disengagement provision because that issue has been finally
decided by the state courts" (id. at 5), and that "with
respect to the ongoing state court proceedings which deal
with the Dandars' alleged violation of Rule 1.730(c), Fla. R.
Civ. P., no final judgment has been entered" (id.), thus
requiring Younger abstention out of respect for the state
proceedings.

Defendants' motion to dismiss additionally argued that
"both the [Eleventh] Circuit and this Court have already noted

12

that the Florida courts have decided the core issues in this dispute and that the full faith and credit doctrine requires this Court to honor and be bound by those rulings." (<u>Id.</u> at 7). Defendants ultimately argued that Dandar's claims were "dilatory and frivolous" and should be dismissed with prejudice and with an award of attorney fees. (<u>Id.</u> at 10).

C. **The February 15, 2013, Order**

On February 15, 2013, this Court entered the Order that is the subject of the Eleventh Circuit's remand. (Doc. # 57). In that Order, the Court noted that, despite Defendants' characterizations to the contrary, this was the Court's first opportunity to scrutinize Dandar's claims through the lens of a motion to dismiss. (<u>Id.</u> at 12). The only other substantive orders entered in this matter (Doc. ## 23, 28) instead applied the four-part analysis for evaluating a motion for preliminary injunction, and the Court found on both occasions that Dandar had not demonstrated "a substantial likelihood of success on the merits." (Doc. # 57 at 13).

Within the February 15, 2013, Order, the Court found that the <u>Rooker-Feldman</u> doctrine did not preclude exercising jurisdiction over this case, reasoning that:

> If Dandar were "merely claiming that the decision[s] of the state court [were] incorrect or that the decision[s] [themselves] violated his

13

constitutional rights[,] such claims would be
barred." Instead, because Dandar's Section 1983
claim alleges that "'*people involved in the
decision* violated some independent right of his .
. . then [Dandar can], without being blocked by the
<u>Rooker-Feldman</u> doctrine, sue to vindicate that
right.'"

(<u>Id.</u> at 14) (quoting <u>Great Western Mining & Mineral Co. v.</u>

<u>Fox Rothschild LLP</u>, 615 F.3d 159, 171 (3d Cir. 2010)).

Nonetheless, the Court found that it could not provide

the equitable relief Dandar sought because doing so would

unduly interfere with the legitimate activities of the state

court, where a final judgment had not yet been entered with

respect to Judge Farnell's finding that Scientology was

entitled to all reasonable fees and costs incurred since

Dandar's filing of the Brennan complaint on February 12, 2009.

(<u>Id.</u> at 15-29). The Court thus abstained pursuant to <u>Younger</u>

<u>v. Harris</u>, 401 U.S. 37 (1971), finding that Dandar's request

effectively asked this Court to enjoin a state court from

proceeding to finalize a state judgment on grounds that the

state judiciary has imposed that judgment unconstitutionally

-- precisely the nature of relief prohibited by <u>Younger</u> and

its progeny. (Doc. # 57 at 22). The Court reasoned that

this request would violate Congress's "manifest desire to

permit state courts to try cases free from interference by

federal courts." (<u>Id.</u> at 15) (quoting <u>Younger</u>, 401 U.S. at

43).

In applying <u>Younger</u> abstention, this Court relied on the three-part test derived from the Supreme Court's decision in <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423 (1982). The Court accordingly analyzed the appropriateness of abstention by consulting the following considerations: (1) Do the proceedings constitute an ongoing state judicial proceeding? (2) Do the proceedings implicate an important state interest? (3) Is there an adequate opportunity in the state proceedings to raise constitutional challenges? (Doc. # 57 at 16-17); <u>Middlesex County</u>, 457 U.S. at 432-37. After answering each of these questions in the affirmative, and finding that no exceptions to abstention were applicable, this Court found that <u>Younger</u> abstention applied in this case. (Doc. # 57 at 24).

The Court thus dismissed Dandar's claims for declaratory and injunctive relief. (<u>Id.</u> at 31). However, the Court further found that, to the extent Dandar sought damages against Defendants under Section 1983, <u>Younger</u> was not necessarily a jurisdictional bar. The Court thus stayed Dandar's 1983 claim for damages "pending the completion of the state court proceedings." (<u>Id.</u> at 32). The Court further declined Dandar's request to file a third amended complaint

in order to add a count for violation of 42 U.S.C. § 1985(2),

finding that such an amendment would be futile. (Id. at 35).

On March 17, 2013, Dandar filed a notice of appeal of

this Court's February 15, 2013, Order. (Doc. # 61). Dandar

appealed this Court's partial dismissal of Dandar's claims as

well as the Court's denial of leave to amend his complaint

for a third time.

### D.   Sprint Communications, Inc. v. Jacobs

On December 10, 2013, during the pendency of Dandar's

appeal, the Supreme Court decided Sprint Communications, Inc.

v. Jacobs, 134 S. Ct. 584 (2013). The facts of that case, as

stated in the Supreme Court's opinion, are as follows:

> This case involves two proceedings, one pending in
> state court, the other in federal court. Each seeks
> review of an Iowa Utilities Board (IUB or Board)
> order.  And each presents the question whether
> Windstream Iowa Communications, Inc. (Windstream),
> a local telecommunications carrier, may impose on
> Sprint Communications, Inc. (Sprint), intrastate
> access charges for telephone calls transported via
> the Internet. . . . Invoking Younger v. Harris . .
> . , the U.S. District Court for the Southern
> District of Iowa abstained from adjudicating
> Sprint's complaint in deference to the parallel
> state-court proceeding, and the Court of Appeals
> for the Eighth Circuit affirmed the District
> Court's abstention decision.

Id. at 588.

In affirming the district court, the Eighth Circuit read

Supreme Court precedent, namely Middlesex County, to require

16

_Younger_ abstention whenever "an ongoing state judicial proceeding . . . implicates important state interests, and . . . the state proceedings provide adequate opportunity to raise federal challenges." _Id._ at 590.

In analyzing whether _Younger_ abstention was appropriate, the Supreme Court explained: "Circumstances fitting within the _Younger_ doctrine, we have stressed, are 'exceptional'; they include, as catalogued in [_New Orleans Public Service, Inc. v. Council of City of New Orleans_, 491 U.S. 350 (1989), ("NOPSI")], 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" _Sprint_, 134 S. Ct. at 588. The Court further explained: "We have not applied _Younger_ outside these three 'exceptional' categories, and today hold . . . that they define _Younger_'s scope." _Id._ at 591.

To that end, the Supreme Court found that the IUB proceeding at issue in _Sprint_ did "not fall within any of the three exceptional categories described in _NOPSI_ and therefore does not trigger _Younger_ abstention." _Id._ at 592. In so finding, the Supreme Court explained that the three _Middlesex County_ factors on which the Eighth Circuit had relied "were

not dispositive; they were, instead, *additional* factors
appropriately considered by the federal court before invoking
Younger." Id. at 592-93. The Supreme Court thus concluded,
"to guide other federal courts, we today clarify and affirm
that Younger extends to the three 'exceptional circumstances'
identified in NOPSI, but no further." Id. at 593-94.

### E.   Eleventh Circuit Opinion

On December 19, 2013, the Eleventh Circuit issued an
opinion affirming in part and vacating and remanding in part
this Court's February 15, 2013, Order. (Doc. # 74). On the
issue of Younger abstention, the Eleventh Circuit noted the
Supreme Court's recent clarification in Sprint that the three
Middlesex County factors are "'not dispositive; they [are],
instead, *additional* factors appropriately considered by the
federal court before invoking Younger,' which itself sets
forth only three limited circumstances in which abstention is
appropriate." (Id. at 3-4). "Because the district court did
not have the benefit of this guidance," the Eleventh Circuit
remanded the issue for this Court's consideration in the first
instance whether the present case involves one of the three
limited circumstances in which abstention is appropriate.
(Id. at 4).

With respect to Dandar's request for leave to amend his

18

complaint to add a 42 U.S.C. § 1985(2) claim, the Eleventh Circuit affirmed this Court's denial of leave to amend.

**F.   The Parties' Respective Positions and the State Court's Entry of Final Judgment**

Upon issuance of the Eleventh Circuit's Mandate (Doc. # 75), this Court re-opened the instant case on January 23, 2014, and directed each party to submit a memorandum detailing their respective positions on the impact of Sprint's recent clarification on this Court's February 15, 2013, Order. (Doc. # 76).

Both parties briefed this issue on February 14, 2014. (Doc. ## 81, 82).   Defendants asserted that the Court's February 15, 2013, Order is correct under the newly-clarified standard in Sprint because this case involves both "civil enforcement proceedings" and "civil proceedings involving orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions," thus fitting squarely within Younger. (Doc. # 82 at 2).   Dandar, however, asserted that this case does not fit into any of the three "exceptional circumstances" because "[j]ust as in Sprint, which was a state case initiated by a private party, the subject state court matter was initiated by motion by a

private corporation, Church of Scientology." (Doc. # 81 at 2).

Dandar additionally argued: "The state court has now entered a Final Judgment against Dandar in excess of $1 million. Scientology seeks immediate enforcement." (Id.). Dandar expressed his intention to "seek an injunction to stay any execution of the state court judgment, entered without any power to do so under [Donovan v. City of Dallas, 377 U.S. 408 (1964)]." (Id. at 4).

On March 28, 2014, Defendants filed a status report in which they explained: "On March 17, 2014, the Pinellas County Circuit Court entered an order of findings of fact and conclusions of law and an order of final judgment in favor of the Church of Scientology . . . . On March 28, 2014, the Dandars filed a notice appealing the two orders dated March 17, 2014." (Doc. # 88 at 3).

## II. Discussion

### A. *Younger* Abstention

"Jurisdiction existing, [the Supreme Court] has cautioned, a federal court's obligation to hear and decide a case is virtually unflagging." Sprint, 134 S. Ct. at 591 (internal quotations omitted). "Parallel state-court proceedings do not detract from that obligation." Id.

20

However, this obligation coexists with Congress's manifest "desire to permit state courts to try state cases free from interference by federal courts." <u>Younger v. Harris</u>, 401 U.S. 37, 43 (1971).

"<u>Younger v. Harris</u> . . . and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."[1] <u>Middlesex County</u>, 457 U.S. at 431. The Supreme Court recently clarified in <u>Sprint</u> that the exceptional circumstances warranting abstention under <u>Younger</u> exist in three types of proceedings:

> First, <u>Younger</u> preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain "civil enforcement proceedings" warrant[ ] abstention. Finally, federal courts refrain[ ] from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."

<u>Sprint</u>, 134 S. Ct. at 591 (internal citations omitted).

Thus, for <u>Younger</u> abstention to apply in the present case, which does not involve a criminal prosecution, the Court

---

[1] Notably, in accordance with <u>Samuels v. Mackell</u>, 401 U.S. 66, 73 (1971), the principles of <u>Younger</u> also apply to "declaratory judgments that would effectively enjoin state proceedings." <u>Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.</u>, 124 F.3d 1258, 1261 (11th Cir. 1997) (internal citations omitted).

must determine whether the state proceedings constitute either "civil enforcement proceedings" or pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." Scientology contends this case would fit within either of these exceptional circumstances, but Dandar maintains that neither one applies. Because the Court determines that the state action is a civil proceeding involving orders uniquely in furtherance of the state court's ability to perform its judicial functions, the Court declines to reach the question as to whether it may also be categorized as a civil enforcement proceeding.

To briefly address the issue of whether the state court proceedings remain ongoing despite the entry of final judgment on March 17, 2014, the Court finds that the state matter indeed remains pending. Because Dandar has appealed the state court orders entered on March 17, 2014, raising on appeal some of the same issues implicated in his request for injunctive relief before this Court,[2] the relevant proceedings

_____

[2] At the May 19, 2014 hearing, the Court asked Dandar to specify the grounds for his state court appeal filed on March 28, 2014. Dandar clarified that the pending state matters include not only his appeal of the final judgment, but also a writ of prohibition pending before the Florida Supreme Court. Dandar previously filed a motion to stay the execution

remain ongoing for the purpose of determining the application of <u>Younger</u>.  Thus, the Court's <u>Younger</u> abstention analysis herein would apply with equal force to Dandar's initial request to enjoin the entry of final judgment in state court as it does to Dandar's current request to enjoin the execution of that judgment during the pendency of his state court appeal.

"Virtually all of the evils at which <u>Younger</u> is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial." <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 608 (1975).  "For <u>Younger</u> purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign." <u>NOPSI</u>, 491 U.S. at 369.

---

of the judgment in the state circuit court and sought the same relief from the appellate court, but both requests have been denied. Dandar states that the grounds for his state court appeal and the pending writ of prohibition are "mostly the same"; specifically, Dandar argues that the state court never had subject matter jurisdiction to enter its orders imposing sanctions against him and that "the <u>Donovan</u> mandate" (again referencing <u>Donovan v. City of Dallas</u>, 377 U.S. 408 (1964)) demonstrates that the state court's judgment was entered in error.

### 1. Orders Uniquely in Furtherance of the State Courts' Ability to Perform their Judicial Functions

In enumerating the third "exceptional circumstance" recognized by <u>NOPSI</u>, <u>Sprint</u> cites to two cases: <u>Juidice v. Vail</u>, 430 U.S. 327 (1977), and <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 13-14 (1987). <u>Sprint</u>, 134 S. Ct. at 591. Accordingly, this Court has carefully consulted these cases for guidance in determining whether the relevant state action involves an order uniquely in furtherance of the state court's ability to perform its judicial functions.

In <u>Juidice</u>, the Supreme Court applied <u>Younger</u> to a Section 1983 action in which an individual was held in contempt of court by the County Court of Dutchess County, New York, for failing to comply with a subpoena requiring his appearance at a deposition. <u>Juidice</u>, 430 U.S. at 328-29. That individual, Harry Vail, thereafter filed an action in the United States District Court for the Southern District of New York seeking to enjoin "the use of the statutory contempt procedures authorized by New York law and employed by appellant justices on the ground that the procedures . . . violated the Fourteenth Amendment to the United States Constitution." <u>Id.</u> at 330.

Referring to the reasoning of Ex parte Young, 209 U.S. 123 (1908), that "the Federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court," the Supreme Court determined that this same principle applied in Juidice. Juidice, 430 U.S. at 335. The Supreme Court explained that "[a] state's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest." Id. Additionally, the Court noted that federal-court interference with the state's contempt process "not only 'unduly interfere(s) with the legitimate activities of the stat(e),' but also 'can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" Id. at 336 (quoting Huffman, 420 U.S. at 601, 604).

Applying the principles outlined in Juidice, the Supreme Court in Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13-14 (1987), reasoned that "[t]here is little difference between the State's interest in forcing persons to [act] in response to a court's judgment and in forcing persons to respond to the court's process on pain of contempt." In Pennzoil,

Pennzoil obtained a jury verdict in state court against Texaco amounting to nearly $11 billion. Id. at 4. Before the state court entered judgment, Texaco filed an action in the United States District Court for the Southern District of New York challenging a Texas law permitting a judgment creditor to secure and execute a lien on a judgment debtor's property unless the debtor filed a bond in at least the amount of the judgment, interest, and costs. Id. at 4-5. Unable to post the bond (which, in accordance with the Texas law, would have amounted to more than $13 billion), Texaco "asked the District Court to enjoin Pennzoil from taking any action to enforce the judgment." Id. at 6. The district court granted injunctive relief, and the Second Circuit affirmed, finding that "abstention was unnecessary." Id. at 7-9.

The Supreme Court, however, found that "[t]he courts below should have abstained under the principles of federalism enunciated in Younger v. Harris." Id. at 10. The Supreme Court explained that the district court's decision implicated a vital state interest in that "States have important interests in administering certain aspects of their judicial systems," and compared the case to Juidice, reasoning that "both [cases] involve challenges to the processes by which the State compels compliance with the

judgments of its courts.  Not only would federal injunctions in such cases interfere with the executions of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."  Id. at 12-14.

In the instant case, Dandar has framed the second amended complaint as an action against private individuals based on Section 1983 and the Declaratory Judgment Act.  However, the relief Dandar seeks is effectively the same as that prohibited by Younger as interpreted by Juidice and Pennzoil.  That is, Dandar asks this Court to enjoin the execution of a state judgment on grounds that the state judiciary has imposed that judgment unconstitutionally.  The Court finds that entering such an injunction in this case, as in Juidice, would "not only 'unduly interfere[ ] with the legitimate activities of the stat(e),' but also 'can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.'"  Juidice, 430 U.S. at 336 (internal citations omitted).

In arguing that Younger abstention is unnecessary here, Dandar characterizes the state court's order imposing sanctions against him as arising out of the McPherson settlement agreement, which is a contract between private

27

parties rather than a direct order of the state court.  Dandar thus insists that an order relating to this agreement cannot constitute one uniquely in furtherance of the state court's ability to perform its judicial functions.  To characterize the state court's order in this light, however, ignores the very grounds on which the order is premised.

Florida Rule of Civil Procedure 1.730 specifically empowers the state courts of Florida to enter a final judgment imposing sanctions, costs, and attorney fees as a consequence of a party's failure to perform under an agreement entered in the course of court-ordered mediation.  The Court finds that interfering with a state court's ability to impose these sanctions and fees, for instance by enjoining the parties before the state court from seeking execution of final judgment,[3] would thus constitute an exceptional circumstance in which the relevant state proceedings involve an order

---

[3] Dandar, at various points in this litigation, has attempted to distinguish between (1) the act of enjoining *the private Defendants* from taking part in the state proceedings and (2) the act of enjoining *the state court itself* from continuing forward with the proceedings.  This Court notes, however, that the Pennzoil Court found Younger abstention appropriate where the plaintiff "asked the District Court to *enjoin Pennzoil* from taking any action to enforce the [state court] judgment."  Pennzoil, 481 U.S. at 6.  The Court therefore finds that Dandar's exercise in semantics presents no novel bar to Younger abstention in the present case.

uniquely in furtherance of the state court's ability to perform its judicial functions.

Dandar acknowledges in the second amended complaint that the relevant agreement was reached during the scheduled mediation of the McPherson case. (Doc. # 45 at ¶ 33). However, Dandar further alleges that the agreement reached at this mediation constituted a "global settlement" that "encompass[ed] not only the court ordered mediation for the McPherson case, but also the myriad of cases brought by Scientology and related entities against Dandar, Dell Liebreich, or the estate," and therefore that such a "global settlement conference" was never court-ordered. (Id.).

The Court finds this argument unavailing, as the scope of Rule 1.730 is not so limited in reach. The rule does not confine the applicability of sanctions under part (c) to certain terms of an agreement, nor does the rule require a court to inquire into the terms of the agreement reached at mediation to determine whether the agreement somehow exceeded the intended scope of the mediation. To the contrary, Rule 1.730 considers only whether "a partial or final agreement is reached" and "reduced to writing and signed by the parties and their counsel, if any," upon completion of the mediation. Fla. R. Civ. P. 1.730(b).

Additionally, with regard to Dandar's argument that it is not an essential judicial function of the state court to enforce the terms of the parties' private settlement agreement, the Court finds the following language from <u>Juidice</u> instructive:

> Contempt in these cases, serves, of course, to vindicate and preserve the private interests of competing litigants, but its purpose is by no means spent upon purely private concerns. It stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory.

<u>Juidice</u>, 430 U.S. at 336 n.12.  The sanctions Dandar incurred as a result of violating an agreement reached at court-ordered mediation were specifically authorized by Rule 1.730(c). This rule, just as the state's civil contempt process, stands in aid of the authority of the judicial system so that its procedures and orders are not rendered meaningless when confronted by a party inclined to disobey.

The Court additionally notes the <u>Pennzoil</u> Court's reasoning that "States have important interests in administering certain aspects of their judicial systems." <u>Pennzoil</u>, 481 U.S. at 12-13.  As explained by Defendants in their post-remand brief:

> The Florida Supreme Court considers the mediation system sufficiently important and crucial to the efficient operation of Florida's system of civil

> justice that it promulgated Rule 1.730(c) to allow
> for sanctions on parties who affirmatively breach
> or fail to perform settlement agreements reached
> through court-ordered mediation. This rule
> demonstrates Florida's strong interest in
> encouraging parties to settle civil disputes
> through mediation, and the state's strong interest
> in enforcing such agreements.

(Doc. # 82 at 6-7). For this reason, the Court finds that interfering with the state court's ability to grant relief under Rule 1.730(c) would indeed interfere with an order "uniquely in furtherance of the State courts' ability to perform their judicial functions." (Id. at 7).[4]

Furthermore, now that final judgment has been entered by the state court, this Court is particularly attentive to Pennzoil's reasoning that "[t]here is little difference between the State's interest in forcing persons to transfer property in response to a court's judgment and in forcing

---

[4] At least one other district court has employed similar reasoning in abstaining under Younger after finding application of the third exceptional category recognized by NOPSI and Sprint. In Thomas v. Piccione, No. 13-425, 2014 WL 1653066 (W.D. Pa. Apr. 24, 2014), a case in which a plaintiff petitioned the federal court to order recusal of a judge presiding over an underlying state action, the district court explained: "Pennsylvania has an important interest in protecting the authority and judicial functions of its court, including the recusal process. For this court to interpose itself in Pennsylvania's recusal process would be as inappropriate as federal intervention in a state court's civil contempt process, Juidice, 430 U.S. at 336, or a state's process for enforcing judgments, Pennzoil, 481 U.S. at 14." Thomas, 2014 WL 1653066, at *5.

persons to respond to the court's process on pain of contempt." Pennzoil, 481 U.S. at 13. Pennzoil thus reinforces the fundamental importance to the states of enforcing the judgments of their courts. Pennzoil, 481 U.S. at 13. This Court accordingly finds Pennzoil instructive in concluding that interfering with a state court's ability to enforce its own judgment would indeed interfere with an order uniquely in furtherance of the state court's ability to perform its judicial functions.

The Court acknowledges the argument Dandar advanced during the May 19, 2014, hearing that the relevant judgment has not been entered as a result of Dandar's contempt; that is, due to the Brennan court's Order granting Dandar's withdrawal from the Brennan action *nunc pro tunc*, Dandar was purged of his contempt in state court. Thus, Dandar argues, in the absence of contempt,[5] the state court's order imposing

---

[5] Despite the parties' comments on this topic at the hearing, the parties have not provided a clear explanation regarding the extent to which Dandar was purged of his contempt for serving as counsel in the Brennan action by way of the district court's order granting *nunc pro tunc* Dandar's motion to withdraw. Notably, Dandar's second amended complaint seeks relief for "Defendants' resort to state court and the judicial machinery in the Circuit Court for Pinellas County as well as the Florida appellate courts *in obtaining, and then enforcing, the contempt orders against the Plaintiffs*." (Doc. # 45 at ¶ 74) (emphasis added). Viewing the relevant state court order as a function of the state court's inherent

Rule 1.730(c) sanctions should not constitute an order uniquely in furtherance of the state court's ability to perform its judicial functions.

Although the Court presumes for the purpose of the present Order that the sanctions of which Dandar presently complains arose entirely from the state court's authority under Rule 1.730(c), the circumstances of this case blur the lines between sanctions imposed pursuant to the rule and sanctions imposed through the state court's contempt processes. As previously explained, even before the Brennan court granted *nunc pro tunc* Dandar's motion to withdraw, the state appellate courts had already concluded that the Pinellas County Circuit Court had the authority to order Dandar's withdrawal from the Brennan matter not only as a remedy available under Rule 1.730, but as a consequence of Dandar's contempt. (See Doc. # 45 at ¶¶ 63-64) (explaining that Florida's Second District Court of Appeal upheld Judge Beach's April 12, 2010, order imposing contempt sanctions with the exception of a damages award calculated in error).

---

contempt authority would frame the argument for abstention in an even more compelling light.

Given the conceptual overlap between (1) sanctions imposed pursuant to the state court's contempt authority and (2) sanctions imposed pursuant to the state court's authority under Rule 1.730(c), the Court finds that the conditions of this case closely resemble the conditions in <u>Juidice</u> warranting abstention. Correspondingly, the Court finds the state's interest in the process of imposing sanctions under Rule 1.730(c) "is surely an important interest," as it is through this process that the state court may "vindicate the regular operation of its judicial system," which includes finality of the agreements reached upon completion of court-ordered mediation. <u>Juidice</u>, 430 U.S. at 335.

Thus, after carefully considering the circumstances surrounding the state court's order imposing sanctions upon Dandar for his violation of the McPherson settlement agreement, the Court finds that the order undoubtedly implicates the state's important interests in administering certain aspects of its judicial system, and that a federal injunction in this case would not only "interfere with the execution of [a] state judgment[ ], but [it] would do so on grounds that challenge the very process by which th[at] judgment[ ] [was] obtained." <u>Pennzoil</u>, 481 U.S. at 14. More specifically, the Court finds that granting the relief Dandar

seeks would impact pending civil proceedings involving
certain orders uniquely in furtherance of the state court's
ability to perform its judicial functions.   Accordingly, the
instant case presents one of the exceptional circumstances
identified in NOPSI and Sprint, and the Court thus abstains
in accordance with Younger.

## 2.   Middlesex County "Additional Factors"

As explained above, the Supreme Court in Middlesex
County articulated three conditions to be considered by
federal courts before invoking Younger: (1) whether there is
an ongoing state proceeding that is judicial in nature, (2)
whether the proceeding implicates important state interests,
and (3) whether there is an adequate opportunity in the state
proceeding to raise constitutional challenges.   Middlesex
County, 457 U.S. at 432-37; Sprint, 134 S. Ct. at 593.
However, Middlesex County further provides that abstention
would be inappropriate upon a "showing of bad faith,
harassment, or some other extraordinary circumstance"
justifying intervention by a federal court.   Middlesex
County, 457 U.S. at 435.

In Sprint, the Supreme Court clarified that these three
conditions "[are] not dispositive; they [are], instead,
*additional* factors appropriately considered by the federal

35

court" after determining that a case fits within one of the three "exceptional circumstances" identified in NOPSI. Sprint, 134 S. Ct. at 593-94 (emphasis in original).  Because this case indeed presents an exceptional circumstance recognized by Sprint and NOPSI, the Court now turns to the three additional considerations articulated in Middlesex County.

First of all, the Court finds that the state proceedings relating to judicial enforcement of Florida Rule of Civil Procedure 1.730(c) are judicial in nature, as Dandar seeks to avoid execution of a judgment entered by the Pinellas County Circuit Court arising from Dandar's violation of an agreement reached during court-ordered mediation.   Neither party contends that the state proceedings are anything other than "judicial" in nature.

Secondly, the Court determines that the state proceedings implicate an important state interest.  "The importance of a state interest may be demonstrated by the fact that . . . the proceedings are necessary for the vindication of important state policies or the functioning of the state judicial system."  First Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc., 825 F.2d 1475, 1484 (11th Cir. 1987).   The Court recognizes that this case involves only

36

private litigants and was not brought with the aim of vindicating important interests of the state. Rather, Dandar brought this action to avoid imposition of "a punitive monetary judgment, certain to destroy his ability to seek his livelihood," (Doc. # 45 at 5), and has not directly challenged a state statute or procedural rule in doing so.

However, the Supreme Court's reasoning in Juidice and Pennzoil underscores the importance to the states of enforcing the orders and judgments of their courts. As explained above, this Court finds that "States have important interests in administering certain aspects of their judicial systems," Pennzoil, 481 U.S. at 12, and correspondingly that a state court's order imposing sanctions under Rule 1.730(c) constitutes a proceeding "necessary for . . . the functioning of the state judicial system." Parsons Steel, 825 F.2d at 1484. The Court thus determines that the relevant state proceedings implicate an important state interest.

Lastly, the Court considers whether there is an adequate opportunity in the state proceedings to raise constitutional challenges. Middlesex County, 457 U.S. at 435. Dandar has provided no authority indicating that Florida's state courts lack the power to consider his constitutional challenges. Indeed, Dandar appealed to Florida's Second District Court of

Appeal Judge Beach's June 10, 2009, order directing Dandar to
cease representation in the <u>Brennan</u> matter, and also appealed
Judge Beach's April 12, 2010, order finding Dandar in civil
contempt and imposing sanctions.   (Doc. # 45 at 20, 26).
Dandar offers no explanation as to why his constitutional
challenges relating to these orders were not raised at the
time of those appeals.   Rather, Dandar explains that, in
appealing the June 10, 2009, order, he argued that the
settlement agreement was unenforceable as interpreted by
Judge Beach because it "(1) violates the Rules Regulating the
Florida Bar; (2) is contrary to a Florida Bar published Ethics
Opinion . . . [(3)] is void based on Florida public policy;
and [(4)] is contrary to both state and Florida federal case
law." (<u>Id.</u> at 20).   In appealing the April 12, 2010, order,
Dandar argued "that the Circuit Court for Pinellas County
lacked subject matter jurisdiction over the [settlement
agreement] to enforce its provisions; that the agreement
cannot be construed as a practice restriction since that would
be void as violative of the Rules Regulating the Florida Bar;
that only the Supreme Court of Florida can place restrictions
on a lawyer's practice of law; and that Dandar cannot be held
in contempt of an order to withdraw from the federal case

where the federal district court judge denied his motion to do just that." (Id. at 26).

Thus, Dandar apparently opted not to challenge either order on constitutional grounds, yet in the instant action Dandar refers to the June 10, 2009, order as his "unconstitutional removal from the Brennan Action," (id. at 32), and refers to the April 12, 2010, order imposing contempt proceedings and resulting in sanctions to be "unfair, punitive and unconstitutional," (id. at 33).

As for Dandar's currently pending appeal of the state court orders entered on March 17, 2014, Dandar stated during the May 19, 2014, hearing that he has raised at least one federal claim before the state appellate court.  That is, Dandar explained that his appeal is partially premised upon the application of the "Donovan mandate" and the Supremacy Clause.  Dandar similarly asserts the Supremacy Clause and Donovan as grounds for his requested declaration and injunction in Count I of the second amended complaint. (See Doc. # 45 at ¶¶ 12-14).  At no point has Dandar contested his ability to raise federal claims in the state proceedings -- Dandar merely contests the conclusions reached by the state courts presiding over his various claims and challenges.

Without any indication to the contrary, the Court finds that there has been at all relevant times an adequate opportunity in the state proceedings for Dandar to raise his constitutional challenges, and thus that _Younger_ abstention applies in this case.

### 3. *Younger* Exceptions Inapplicable

The Supreme Court in _Younger_ explained that abstention might be inappropriate in cases of bad faith or harassment, or under other "extraordinary circumstances in which the necessary irreparable injury can be shown." _Younger_, 401 U.S. at 53.

The Supreme Court determined that the bad faith exception did not apply in _Juidice_ because the exception was neither "alleged in appellees' complaint [n]or proved by their evidence," and, although the complaint "could be construed to make such allegations as to the creditors, there are no comparable allegations with respect to appellant justices who issued the contempt orders." _Id._ The Supreme Court further explained that "[t]he exception may not be utilized unless it is alleged and proved that they are enforcing the contempt procedures in bad faith or are motivated by a desire to harass." _Id._

40

In determining whether such an exception applies in the
instant action, the Court notes that subsequent cases have
revealed the Younger exceptions to be extremely limited in
scope.  The Supreme Court in Moore v. Sims, 442 U.S. 415, 433
(1979), explained that "[t]he most extensive explanation of
those 'extraordinary circumstances' that might constitute
great, immediate, and irreparable harm is that in Kugler v.
Helfant, 421 U.S. 117 (1975).  Although its discussion is
with reference to state criminal proceedings, it is fully
applicable in this context as well[:]"

> Only if extraordinary circumstances render the
> state court incapable of fairly and fully
> adjudicating the federal issues before it, can
> there be any relaxation of the deference to be
> accorded to the state criminal process.  The very
> nature of extraordinary circumstances, of course,
> makes it impossible to anticipate and define every
> situation that might create a sufficient threat of
> such great, immediate, and irreparable injury as to
> warrant intervention in state criminal proceedings.
> But whatever else is required, such circumstances
> must be extraordinary in the sense of creating an
> extraordinarily pressing need for immediate federal
> equitable relief, not merely in the sense of
> presenting a highly unusual factual situation.

Moore, 442 U.S. at 433 (quoting Kugler, 421 U.S. at 124-25).

Dandar did not argue in response to Defendants' motion
to dismiss that an exception to Younger abstention should
apply in this case.  Instead, Dandar erroneously rejected the
prospect of Younger abstention by stating that "[b]ecause

this instant matter was filed before any final judgment in
the state court, neither Rooker-Feldman nor the Younger
doctrine require dismissal or abstention." (Doc. # 54 at 3).

However, in his post-remand brief, Dandar argues that
Defendants' immediate enforcement of the state court judgment
"in excess of $1 million" would cause him "irreparable
injury." (Doc. # 81 at 2). Dandar also reminds the Court
that he has alleged "bad faith and a violation of rights
pursuant to 42 U.S.C. § 1983." (Id.). However, the
circumstances of this case do not rise to the level of
warranting federal intervention in the state proceedings. In
so finding, the Court adheres to the Supreme Court's
explanation in Kluger that "[o]nly if extraordinary
circumstances *render the state court incapable of fairly and
fully adjudicating the federal issues before it*, can there be
any relaxation of the deference to be accorded to the state
. . . process." Kluger, 421 U.S. at 124 (emphasis added).

The Court finds that, even if Dandar's conspiracy
allegations were sufficient to bring the conduct of Judge
Beach and, by extension, the state court proceedings over
which he presided, within the intended meaning of "bad faith"
for the purpose of the Younger exception, Dandar has still
failed to allege that the state proceedings were entirely

adjudicated by courts incapable of fully and fairly considering the federal issues before them.  That is, Dandar alleges that the conspiracy involved only the private Defendants and Judge Beach.  Dandar has not alleged that the judges of Florida's Second District Court of Appeal or the Florida Supreme Court, in reviewing Judge Beach's relevant determinations, have engaged in similar misconduct.  Thus, this Court finds that Dandar has failed to allege such extraordinary circumstances that would warrant federal intervention in the state proceedings.  The Court accordingly finds that no exception to the Younger abstention doctrine applies in this case, and that the Court must therefore permit the state court to proceed without federal judicial interference.

### B.   Additional Considerations Favoring Abstention

In determining that Younger abstention applies in this case, the Court finds persuasive certain cases in other jurisdictions applying Younger where a plaintiff alleged in a Section 1983 action that a state judge, or private individuals conspiring with a state judge, deprived the plaintiff of his constitutional rights.  See, for example, Nilsson v. Ruppert, Bronson & Chicarelli Co., L.P.A., 888 F.2d 452, 454 (6th Cir. 1989) ("Although the state case

involves only private parties, it is Nilsson's allegation of a conspiracy involving the subversion of Ohio's legal system that is the genesis of the constitutional claims made in the present case, and it is in the resolution of these claims that Ohio has a great interest . . . . [Thus,] we find that the Younger doctrine applies . . . ."), and Tast v. Dean, 182 F. App'x 748, 749-50 (10th Cir. 2006) (finding that the Younger abstention doctrine precluded a district court's adjudication of a Section 1983 claim filed by a plaintiff against the state court judge then-presiding over the plaintiff's state tort action).[6]

Additionally, this Court is mindful of the Eleventh Circuit's warning regarding enjoining certain state court proceedings related to this very action. In Estate of Brennan v. Church of Scientology Flag Service Organization, 645 F.3d 1267 (11th Cir. 2011), the Eleventh Circuit vacated an injunction premised on the All Writs Act entered by the district court. Although this Court recognizes that the anti-injunction statute at issue in the Brennan decision would not

---

[6] The Court acknowledges that both of these cases were decided before Sprint's recent clarification of the law on Younger abstention. Nonetheless, the Court references these cases for their discussions pertaining to the non-dispositive Middlesex County factors as well as their general considerations of comity.

necessarily operate to bar this Court's issuance of an
injunction pursuant to Section 1983, the Court finds the
Eleventh Circuit's general warning equally applicable in this
case: "a district court['s] conviction that a state
proceeding has reached or is reaching an erroneous result
does not alone warrant an injunction against those
proceedings." <u>Id.</u> at 1277. Thus, irrespective of this
Court's convictions regarding the proceedings imposing
sanctions against Dandar in state court, an injunction cannot
issue where abstention is appropriate.

**III. <u>Application to Dandar's Claims</u>**

    **A. <u>Declaratory Judgment Act</u>**

Dandar lists the following as "Claims for Relief" under
Count I of the Complaint:

> (a) For a declaration that Plaintiffs cannot be
> sanctioned by a state court for filing and
> participating in a federal action, whether
> or not the filing of the federal action is
> in breach of a private settlement agreement;
>
> (b) For an order *requiring* [Scientology] *to
> terminate the state proceedings*;
>
> (c) For an emergency preliminary order with a
> subsequent permanent order *enjoining*
> [Scientology], its agents or attorneys, and
> anyone acting in concert for it, including
> any other Scientology entity, *from pursuing
> the state court action* and/or instituting
> any action against Plaintiffs with respect
> to the subject matter of this action; [and]

> (d)  For Plaintiffs' damages, both compensatory
>      and punitive; . . . .

(Doc. # 45 at 5) (emphasis added).

As discussed at length above, "the States have important interests in administering certain aspects of their judicial systems." Pennzoil, 481 U.S. at 12-13. A declaratory judgment issued by this Court "requiring Scientology to terminate the state proceedings" (Doc. # 45 at 5) would effectively enjoin the state court proceedings entirely, thus interfering with the execution of a state court judgment and correspondingly hindering the administration of the state judicial system. The Court finds that impermissible interference would result from granting Dandar's claims for relief under Count I. Accordingly, Younger abstention applies to the declaratory and injunctive relief sought, Old Republic, 124 F.3d at 1261, and the Court grants Defendants' motion to dismiss as to Count I.

## B.   42 U.S.C. § 1983

Within Count II of the Complaint, Dandar lists the following "Claims for Relief":

> (a)  Enter preliminary and permanent injunctions
>      *enjoining the Defendants,* their officers,
>      employees,    agents,    attorneys    and
>      successors,  and  all  persons  in  active
>      concert  or  participating  with  any  of  them,

46

> *from actively assisting the state judges or
> courts in their efforts to interfere with
> the Plaintiffs' rights* by filing any suit
> based on the [Settlement Agreement], *by
> conducting any further hearings, or entry of
> any additional orders or judgments, and
> enjoining the execution of any judgment.*

    (b)  Grant trial by jury.

    (c)  Award compensatory damages against each
Defendant.

    (d)  Award punitive damages against each
defendant.

    (e)  Enter a declaratory judgment declaring that
the Defendants' actions violated the
Plaintiffs' First, Fifth, Sixth, and
Fourteenth Amendment rights.

(Doc. # 45 at 33) (emphasis added).

As in the context of Count I, the Court finds that
Younger abstention requires dismissal of Dandar's claims for
declaratory and injunctive relief under Count II as well.
However, to the extent that Dandar seeks damages against the
Defendants under Section 1983, Younger is not necessarily a
jurisdictional bar.  See Deakins v. Monaghan, 484 U.S. 193,
202 (1988) (reserving the issue as to whether Younger applies
to Section 1983 damages actions); Doby v. Strength, 758 F.2d
1405, 1406 (11th Cir. 1985) (applying Younger and ordering a
stay, rather than dismissal, of a Section 1983 damages claim);
Stoddard v. Fla. Bd. of Bar Examiners, 509 F. Supp. 2d 1117,

1123 (N.D. Fla. 2006) ("Claims for injunctive relief properly may be dismissed based on <u>Younger</u>, but under the law of this circuit, damages claims in analogous circumstances should be stayed, not dismissed.").

This Court finds that staying rather than dismissing Dandar's Section 1983 claim for damages at this juncture will allow the "parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts to assume jurisdiction where jurisdiction properly exists." <u>Deakins</u>, 484 U.S. at 202-03. This Court thus declines to resolve the merits of Dandar's Section 1983 claim for damages, and accordingly stays this claim, pending the completion of the state court proceedings.

**IV.   <u>Conclusion</u>**

After reconsideration in light of <u>Sprint</u>, the Court modifies its previous Order on Defendants' motion to dismiss as set forth above. The Court finds that abstention under <u>Younger</u> is still appropriate, as the injunctive and declaratory relief Dandar seeks pursuant to the Declaratory Judgment Act in Count I of the second amended complaint would effectively enjoin the state court proceedings. The Court thus grants Defendants' motion to dismiss as to Count I. Similarly, the Court finds that <u>Younger</u> abstention is

appropriate with regard to Dandar's claims for injunctive and declaratory relief under Section 1983.  The Court thus grants Defendants' motion to dismiss to the extent that Dandar seeks injunctive and declaratory relief under Count II.  However, to the extent that Dandar's second amended complaint states a claim for damages against Defendants under Section 1983, Defendants' motion to dismiss is denied, and Dandar's claim for damages under Section 1983 is stayed pending the outcome of the state court proceedings.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants' Motion to Dismiss (Doc. # 48) is **GRANTED in part and DENIED in part** as detailed herein.

(2) The Clerk is directed to **STAY** and **ADMINISTRATIVELY CLOSE** this case pending further order of the Court.

(3) On or before June 27, 2014, the parties are directed to advise the Court of the status of the relevant state court proceedings.  Thereafter, the parties are further directed to file a status report every thirty (30) days until the completion of the state court proceedings.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of May, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record